Elaine ROUNDY, Plaintiff and Respondent,

v.

Anthony COOMBS and Dot Alvey Coombs, husband and wife; and Larry Coombs, Executor of the Estate of E.H. Coombs, Defendants and Appellants.

No. 18208.

Supreme Court of Utah.

July 18, 1983.

Norman H. Jackson, Richfield, for defendants and appellants.

Tex R. Olsen, Richfield, for plaintiff and respondent.

HALL, Chief Justice:

Plaintiff brought this action for reformation of the metes and bounds description of real property contained in a deed and to quiet title. At trial, plaintiff sought leave to amend her complaint to include a claim for four shares of water stock alleged as being appurtenant to the land. Over the objections and motions of the defendants, evidence was presented on that issue. The court granted reformation, quieted title in plaintiff and awarded two shares of water to her.

On appeal, defendants challenge only the award of the water stock, the issue presented being whether the evidence at trial was sufficient to warrant reformation of the deed to include a conveyance of water. We conclude that it was not and reverse.

Plaintiff and defendant Anthony Coombs (hereinafter "defendant") are sister and brother. In 1962, their father sold all of his holdings in Boulder, Garfield County, to defendant. The sale included farmland, grazing permits, water stock in the Boulder Irrigation Company, a corporation, and a six-acre homesite. All documents of title were placed in escrow for delivery at such time as the purchase price was paid in full.

In 1964, plaintiff entered into an agreement with her father to purchase the six-acre homesite. To accommodate the sale, defendant executed a quitclaim deed to the property in favor of his father, who in turn executed a warranty deed to the property in favor of plaintiff, and both deeds were placed in escrow. Neither of the deeds nor any of the other documents pertaining to the sale made mention of any intention to sell or transfer any water, and the record contains no evidence of any discussion, negotiation or agreement for the sale or transfer of any water to plaintiff.

The sale agreement imposed upon plaintiff the obligation to pay all future real property tax assessments, but imposed no similar obligation to pay water stock assessments, all of which were assumed and paid by defendants.

Plaintiff took possession of the homesite, and once or twice a month when defendant did not need the water for his farm, she irrigated the garden, pasture and orchard area around the homesite, as had been done since 1941. She also irrigated with culinary water supplied by the town of Boulder. Defendant testified that her use of the Boulder Irrigation Company water was with his permission only when hay was being harvested on his own land, as had been the practice of his father.

The evidence was in dispute as to the size of the area that was irrigated. Defendant testified that it was one and a half acres, while plaintiff maintained that it was over

four acres. However, the evidence established that one share of water would irrigate approximately one acre of land.

In 1971, the father withdrew the deeds and the water certificates from escrow. He delivered the deeds to the homesite to plaintiff, and she recorded them. He endorsed, transferred and delivered all of the water certificates to defendant, who in turn pledged them as security for successive loans, and they remain so pledged to date.

In 1975, the Boulder Irrigation Company developed a pipeline system to distribute its water and abandoned its ditch system. Defendant placed his water stock in the new system, which bypassed the homesite, and plaintiff was thereafter deprived of any irrigation water. Some five years later, in 1980, this suit was filed.

The trial court found that Boulder Irrigation Company water had been used on approximately two acres of the homesite over a period of many years, and that there was an "understanding of all parties that there was some water to be used upon the property." Thereupon, the court concluded that plaintiff was entitled to two shares of water stock and reformed the deed accordingly.

U.C.A., 1953, § 73–1–10 provides in pertinent part that water rights:

[S]hall be transferred by deed in substantially the same manner as real estate, except when they are represented by shares of stock in a corporation, *in which case water shall not be deemed to be appurtenant to the land* . . . . [Emphasis added.]

In *Brimm v. Cache Valley Banking Co.,*[1] the Court interpreted the underscored language of the foregoing statutory provision as giving rise to:

[A] *rebuttable* presumption that a water right represented by shares of stock in a corporation did not pass to the grantee as an appurtenance to the land upon which

the water right was used, but that *the grantee could overcome such presumption if he could show by clear and convincing evidence* that said water right was *in fact appurtenant* and that *the grantor intended to transfer the water right with the land,* even though no express mention of any water right was made in the deed. [Emphasis added.]

Plaintiff relies upon *Brimm* to sustain the judgment of the trial court. However, it is distinguishable on its facts. In that case, all of the water had been used on the land for many years and the land had little value without the water. The land was appraised on the assumption that the water went with the land and was purchased on the apparent basis that the water went with the land, all of which rebutted the statutory presumption that the water was not appurtenant to the land. In contrast, the facts in the instant case are that only a small portion of the water represented by the shares of stock owned by defendant were ever used on the homesite, and when used it was with his permission; the value of the homesite was not dependent upon the use of the water; the water was used only once or twice a month; other water supplied by the town of Boulder was available and was used by plaintiff; and the record does not reflect an agreement or "understanding" of any kind that plaintiff's purchase of the homesite included any water. In fact, the converse is further clearly and convincingly evidenced by the simultaneous delivery of the respective deeds, the plaintiff's containing no conveyance of water, while defendants' described and conveyed all of the water stock. Furthermore, the father also simultaneously endorsed, transferred and delivered to defendant all of the water stock.

The most to be gained from the evidence in this case is that over a period of many years (since 1941), Boulder Irrigation water

---

1. 2 Utah 2d 93, 269 P.2d 859 (1954); *see also* *Abbott v. Christensen,* Utah, 660 P.2d 254 (1983).

had been used on the homesite, and that plaintiff had some use of that water from and after she took possession. However, as this Court observed in *Hatch v. Adams:*[2]

> We are of the opinion that proof that water represented by water stock was used on certain land by the owner of the land during the entire period of his ownership of the land is not alone sufficient to rebut the presumption that such water is not to be deemed appurtenant.

In the instant case, plaintiff has made no showing of a mutual mistake of fact as would support reformation of the deed.[3]

We further conclude that plaintiff was not entitled to reformation of the plain and unambiguous terms of the deed and the related sale documents, she having failed to bear the burden of clear and convincing proof required to rebut the statutory presumption that water represented by shares of stock shall not be deemed to be appurtenant to the land.[4]

Reversed and remanded for the purpose of entry of judgment in favor of defendants.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

---

**2.** 7 Utah 2d 73, 318 P.2d 633 (1957), *aff'd on rehearing,* 8 Utah 2d 82, 329 P.2d 285 (1958).

**3.** *See Ingram v. Forrer,* Utah, 563 P.2d 181 (1977); 66 Am.Jur.2d 549 Reformation of Instruments § 22, at p. 550.

