2011 UT 48

**SANPETE AMERICA, LLC,**
Plaintiff and Appellant,

v.

Christian **WILLARDSEN**, an individual; Douglas Neeley, an individual; Attorneys' Title Guaranty Fund, Inc., a Colorado Corporation; Enid Graser, an individual; and All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Lien, or Interest in Water Right Nos. 65–920 and 65–1077, or Who Are Adverse to Plaintiff's Title Therein, or Any Cloud Thereon, Defendants and Appellees.

No. 20090616.

Supreme Court of Utah.

Aug. 16, 2011.

Rehearing Denied Oct. 27, 2011.

J. Craig Smith, Kathryn J. Steffey, Salt Lake City, for plaintiff.

David C. Wright, Salt Lake City, for defendant.

Douglas L. Neeley, Manti, pro se.

Chief Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶ 1 This appeal involves the conveyance of a water right with a tortuous history, blunders in the conveyance process, and two suc-cessive trial judges, whose rulings were inconsistent on some points but reached the same result: dismissal of the plaintiff's claims. Appellant, Sanpete America, LLC, asks us to reverse aspects of both judges' decisions and hold that it is entitled to damages and attorney fees from the Appellees, Christian Willardsen and Douglas Neeley. We decline to do so.

¶ 2 Although we conclude that some errors were made below, we affirm both judges' conclusion that Sanpete America is entitled to no damages. We hold that Mr. Willardsen conveyed his portion of the water right to Sanpete America under a warranty deed, Mr. Willardsen breached no covenants in the deed, and Mr. Neeley's actions were not the cause of Sanpete America's alleged damages. We therefore affirm the judgment dismissing Sanpete America's claims.

## BACKGROUND

¶ 3 At the heart of this appeal is the conveyance of approximately 110 acres of farmland (the Farm) and certain water rights located in Sanpete County, Utah. In the summer or fall of 1998, Robert Clyde approached the Farm's owner, Christian Willardsen, about a potential purchase. During Mr. Clyde's visit, Mr. Willardsen showed him a well and stated it was sufficient to irrigate the Farm and was "his well." The water right associated with the well is known as Water Right No. 65–920 (WR920), the number assigned to it by the Division of Water Rights.

¶ 4 Mr. Clyde was a member of Sanpete America, LLC, a Utah limited liability company with three other members: Paul Hamilton, Vern Fischer, and Merrill Ogden.[1] After Mr. Clyde's visit to the Farm, the members of Sanpete America discussed purchasing the Farm and WR920. Mr. Hamilton, a former real estate agent who purported to have experience in the conveyance of water rights, visited the Division of Water Rights office in Richfield, Utah, to deter-

---

1. Sanpete America is the assignee and successor in interest to Zenos Corporation (Zenos). Because Zenos assigned to Sanpete America its interests in the property and the water rights that are the subject of this appeal, we refer to both Zenos and Sanpete America collectively as "Sanpete America."

mine the status of Mr. Willardsen's ownership of WR920. He obtained a description of the water right, which indicated that it was sufficient to irrigate 200 acres and listed the owner of the water right as Seymour E. Christensen, the Farm's owner prior to Mr. Willardsen.

¶ 5 Mr. Hamilton then researched the chain of title to the Farm at the Sanpete County Recorder's Office. He found a 1967 warranty deed conveying title to the Farm from Seymour E. Christensen to Mr. Willardsen and his wife. Mr. Hamilton determined that the property conveyance meant that Mr. Willardsen owned WR920 because Mr. Hamilton believed water rights normally passed to grantees with property. During his research, Mr. Hamilton also encountered a reference to eighty shares of stock in the South Fork of Ditch 28 Pumping Company, but this did not concern him.

¶ 6 In early June 1999, the members of Sanpete America visited the office of Douglas Neeley, Mr. Willardsen's attorney, to arrange for a sixty-day option to purchase the Farm and Mr. Willardsen's water rights. Mr. Neeley operated a title company in addition to his law practice, and he acted as escrow agent in the transaction. During the meeting, Mr. Neeley stated he did not know anything about the conveyance of water rights, that he would not guarantee the conveyance of Mr. Willardsen's water rights, and that he typically referred water issues to a water rights attorney. Mr. Hamilton agreed to take care of the legal description of the water rights to be conveyed and took on the responsibility of determining what water rights Mr. Willardsen owned. Mr. Hamilton then obtained legal descriptions of the water rights associated with the Farm, including WR920 and a smaller well used for culinary water, known as Water Right No. 65–918 (WR918).

¶ 7 The members of Sanpete America believed that the purchase of WR920 would yield six hundred acre-feet of water. At the time, one acre-foot of water was worth between $3,000 and $4,000, making the value of six hundred acre-feet between $1.8 million and $2.4 million. Pursuant to the option contract, Sanpete America could purchase the Farm and the water rights for substantially less: $328,350. Sanpete America planned to sell about one hundred acre-feet of surplus water to satisfy the entire purchase price. To furnish a down payment, Sanpete America secured a $35,000 loan, incurring $1,400 in fees.

### A. The Transaction Between Sanpete America and Mr. Willardsen

¶ 8 Sanpete America exercised its option to purchase the Farm and Mr. Willardsen's water rights, and the closing took place August 7, 1999, at Mr. Neeley's office. Mr. Neeley's office manager, Natalie Tucker, conducted the closing because Mr. Neeley was out of town.

¶ 9 Sanpete America and Mr. Willardsen executed a Land Purchase Agreement that Mr. Neeley's office had drafted. Pursuant to the agreement, Sanpete America would purchase the following property: 109.45 acres of land, comprising fifteen parcels; the "underground [w]ater [w]ell, Water [R]ights Number 65–920 ... a flow of 1.1783 cfs, irrigation of 200 acres"; "a 3[-inch] culinary well"; an irrigation pond; and "[a]ny and all other [w]ater now a part of or belonging to the subject property." The agreement stated that Mr. Willardsen would have "free title to the subject property" at closing and would convey title to Sanpete America by warranty deed.

¶ 10 The parties also executed a warranty deed (the Warranty Deed), but it was not delivered to Sanpete America at the closing. The Warranty Deed, drafted by Mr. Neeley's office, lacked a legal description of the Farm's smaller well, WR918, simply referring to it as "a 3[-inch] culinary well." Mr. Hamilton told Ms. Tucker he would provide a legal description of WR918 to include in the Warranty Deed, and he did so in a letter on August 9, 1999. But instead of adding the description of WR918 to the deed, Ms. Tucker *replaced* the legal description of WR920 with the description of WR918. Ms. Tucker recorded the Warranty Deed that same day, omitting any description of or reference to WR920.

¶ 11 About two or three weeks after closing, Mr. Hamilton spoke with Ms. Tucker about the omission of WR920 from the Warranty Deed. Ms. Tucker promised to correct the error. Soon thereafter, Mr. Hamilton received a copy of a "new" warranty deed in the mail, but Mr. Neeley's office had not corrected it to include WR920. Mr. Hamilton called Mr. Neeley's office, which again assured Mr. Hamilton that the problem would be resolved.

¶ 12 Shortly thereafter, Mr. Clyde learned from the family leasing the Farm that Wayne Graser, a neighbor, had an interest in WR920. Mr. Clyde relayed this information to the other Sanpete America members, and Mr. Hamilton again checked the records of the Division of Water Rights. The records were identical to those he had seen prior to closing and indicated no others having interest in WR920. But Mr. Hamilton did discover that Mr. Neeley's office had failed to file the Warranty Deed with the Division of Water Rights so that it could update its ownership records. In September 1999, Mr. Hamilton again visited Mr. Neeley's office and was assured the error would be fixed.

¶ 13 On June 9, 2000, Mr. Neeley finally prepared another deed, which was signed by Mr. Willardsen and was titled "Warranty Deed." The language of the deed, however, *quitclaimed* Mr. Willardsen's rights in WR920 to Sanpete America (the Quitclaim Deed). Mr. Neeley's office recorded the Quitclaim Deed on June 21, 2000. On June 28, Mr. Neeley sent a copy of the Quitclaim Deed to the Division of Water Rights.

¶ 14 On July 7, 2000, the Division informed Mr. Neeley that the state engineer would not update its records to list Sanpete America as a 100 percent owner of WR920. The Division's files indicated that WR920 was owned by an entity known as South Fork of Ditch 28 Pumping Company, which had issued shares to multiple individuals. Mr. Neeley did not forward this letter to Sanpete America.

¶ 15 In August 2000, Sanpete America's Mr. Fisher visited the Division to inquire about WR920. He was given a copy of the Division's July 7 letter to Mr. Neeley. At this point, the members of Sanpete America believed that they could not sell any portion of WR920, which compromised the company's ability to make an upcoming payment to Mr. Willardsen. Mr. Hamilton sent a letter to Mr. Neeley and Mr. Willardsen requesting that the payment be postponed. Mr. Neeley responded with a letter notifying Sanpete America that it was in default and that it had ninety days to cure. Sanpete America cured its default by obtaining a bank loan, which it had to renew several times.

¶ 16 On August 21, 2000, the Division recognized Sanpete America as the owner of a portion of WR920 sufficient to irrigate 68.46 acres. In financial distress, Sanpete America sold a portion of WR920 sufficient to irrigate 31.6 acres, along with 31.6 acres of land, to Arlin K. and Karalyn R. Freeman. The Freemans also acquired an option to purchase more land and water at the same price. The Freemans' purchase price of $189,900 was below fair market value for the land and water rights. With these proceeds, Sanpete America paid the remaining balance owed to Mr. Willardsen.

¶ 17 In May 2002, Sanpete America sold three acre-feet of WR920 to William and Gloria Winter at fair market value. Later, the Freemans exercised their option to purchase a portion of WR920 sufficient to irrigate 21 acres, along with 21 acres of the Farm. This sale, for $126,780, was again below fair market value. Sanpete America suffered a loss of approximately $240,000 from selling land and water at below fair market value while under financial distress. It also incurred $23,000 in interest charges and fees for obtaining loans to pay balances due to Mr. Willardsen.

### B. The History of WR920

¶ 18 In November 2002, Sanpete America hired counsel to resolve problems with its ownership of WR920. Its counsel hired Dee Hansen, a former state engineer, to research the water right. Mr. Hansen spent approximately ten to fifteen hours researching WR920 and concluded that it was a complicated matter. His research revealed the following history.

¶ 19 In 1934, Seymour E. Christensen, Mr. Willardsen's predecessor in interest, drilled a well for irrigation purposes. Mr. Christensen filed an underground water claim for that well with the Utah state engineer in 1936. The state engineer's office granted that claim and assigned it number 65–920. WR920 later was owned by South Fork of Ditch 28 Pumping Company (South Fork), which issued 144 shares of stock owned by various shareholders.[2] Mr. Christensen was a majority shareholder in South Fork and eventually acquired a total of eighty shares.

¶ 20 In 1967, Mr. Christensen conveyed 106 acres of land and his interest in WR920 to Mr. Willardsen, executing a warranty deed purporting not only to transfer the land but also eighty shares of stock in South Fork. Mr. Willardsen also received a stock certificate from Mr. Christensen representing the eighty shares. By 1977, the only remaining owners of interest in WR920 were Mr. Willardsen and Mr. Graser, whose thirty-seven shares later passed to his wife, Enid Graser.[3]

### C. Sanpete America's Lawsuit

¶ 21 After discovering the nature of the ownership interests in WR920, counsel for Sanpete America sent a letter to Mr. Willardsen and Mr. Neeley asking them to obtain Ms. Graser's execution of a quitclaim deed. The quitclaim deed reserved a portion of WR920 for Ms. Graser that reflected Mr. Hansen's findings. Mr. Willardsen approached Ms. Graser about executing the quitclaim deed but advised her to consult an attorney, which she did. Ms. Graser did not sign the quitclaim deed.

¶ 22 On June 9, 2004, Sanpete America filed a complaint against Ms. Graser, Mr. Willardsen, Mr. Neeley, and others asserting various causes of action, including a quiet

title action, with respect to the conveyance of WR920. In August 2006, Sanpete America and Ms. Graser stipulated to a judgment resolving their ownership of WR920. Under the stipulated judgment, Ms. Graser owned the right to irrigate 51.83 acres, or 31.62 percent of WR920, which represented the share that Mr. Hansen had earlier determined Ms. Graser owned. Sanpete America owned the right to irrigate 58.403 acres, which reflected the amount remaining after the sale of portions of WR920 to the Freemans and the Winters. Sanpete America expended approximately $80,000 in attorney fees leading up to the stipulated judgment.

¶ 23 In addition to the quiet title action against Ms. Graser, Sanpete America sought damages from Mr. Willardsen and Mr. Neeley. Sanpete America asserted that Mr. Willardsen engaged in misrepresentations, breached the Land Purchase Agreement, and was unjustly enriched.[4] As to Mr. Neeley, Sanpete America claimed that he breached his escrow contract with Sanpete America, committed professional negligence, and breached his fiduciary duties as escrow agent by not following the parties' instructions. Sanpete America sought damages from the defendants for losses incurred from the sale of land and water rights at below fair market value, payment of loan fees and interest, and payment of attorney fees in its action against Ms. Graser.

### D. Judge Mower's Memorandum Decision

¶ 24 Judge David L. Mower presided over a bench trial spanning eight days and made various determinations that are relevant to Sanpete America's appeal (the Memorandum Decision).[5] First, Judge Mower held that Mr. Willardsen's portion of WR920 did not pass to Sanpete America as an appurtenance

---

2. It is unresolved what form of entity South Fork was or how it became the owner of WR920. The Utah History Research Center was unable to locate any such entity in its incorporation indexes for the State of Utah and for Sanpete County. Nonetheless, Sanpete America has conceded that South Fork dissolved at least twenty years ago and that interest in WR920 should no longer be conveyed by stock certificate.

3. The remaining twenty-seven of the 144 shares were owned by Hans Walter Hansen of Ephraim,

Utah. The state engineer approved his application to change the point of diversion and place of use of his share of WR920 in the spring of 1977.

4. Sanpete America amended its complaint during trial pursuant to rule 15(b) of the Utah Rules of Civil Procedure, adding an alternative claim for breach of warranty against Mr. Willardsen.

5. Trial was held January 3–5, 2007; December 3–4, 2007; and March 10–12, 2008.

to the Farm under the Warranty Deed. Second, Judge Mower rejected as insufficiently developed the defendants' argument that the breach of contract action failed because the contract had merged with the deed. Third, Judge Mower found that Mr. Willardsen did not breach the Land Purchase Agreement when he conveyed clouded title to WR920 to Sanpete America. He found that Mr. Hamilton had taken responsibility for determining what water rights Mr. Willardsen had and that Mr. Willardsen had relied on Mr. Hamilton's efforts. Judge Mower did conclude that Mr. Willardsen breached the Land Purchase Agreement by failing to convey his portion of WR920 by warranty deed, but he also found that Sanpete America "did not suffer damages as a result of this breach" and had not proved "how lack of a warranty deed for [WR920] caused it to incur ... damages." Fourth, Judge Mower held that Mr. Willardsen breached no covenants of warranty.[6]

¶ 25 With respect to Mr. Neeley, three aspects of the Memorandum Decision are notable on appeal. First, Judge Mower found that Mr. Neeley failed to include WR920 in the Warranty Deed and later prepared a quitclaim deed that was contrary to the instructions of the parties at closing. Second, these failures constituted a breach of a direct contract with Sanpete America, a breach of his professional duties as escrow agent, and a breach of his fiduciary duties. Third, Judge Mower concluded that none of Mr. Neeley's breaches caused Sanpete America's damages. He therefore dismissed all three claims against Mr. Neeley.

### E. Judge Bagley's Rule 59 Order

¶ 26 Sanpete America, Mr. Willardsen, and Mr. Neeley each moved to alter or amend Judge Mower's findings and conclusions of law pursuant to rule 59 of the Utah Rules of Civil Procedure. Judge Mower had retired shortly after issuing the Memorandum Decision and entering a judgment of dismissal, and therefore Judge Marvin Bagley heard argument on the parties' motions. On June 24, 2009, Judge Bagley issued an order granting Mr. Willardsen's and Mr. Neeley's motions and denying Sanpete America's motion (the Rule 59 Order).

¶ 27 Judge Bagley amended Judge Mower's rulings in the Memorandum Decision to conclude, among other things, that (1) Mr. Willardsen's portion of WR920 "was appurtenant to the real property owned and farmed by Willardsen and was also conveyed by appurtenance to [Sanpete America] under the August 7, 1999 Warranty Deed"; (2) the doctrine of merger extinguished the underlying Land Purchase Agreement between Mr. Willardsen and Sanpete America, thereby foreclosing Sanpete America's breach of contract action; (3) Mr. Willardsen conveyed clear title to Sanpete America in the August 7, 1999 Warranty Deed and therefore breached no warranty; (4) "Judge Mower's conclusion that Mr. Neeley breached a contract or other duty was inappropriate under the facts and circumstances of this case"; (5) Sanpete America was not entitled to attorney fees because Ms. Graser had never challenged title, there was no showing that the attorney fees were reasonable or necessary, and Sanpete America "failed to offer sufficient admissible evidence demonstrating that the fees were allocated among the various claims"; and (6) no damages were available because Sanpete America failed to establish breach of contract, warranty, or other duty. Sanpete America appealed. We have jurisdiction pursuant to Utah Code section 78A-4-102(3)(b).

### STANDARD OF REVIEW

■ ¶ 28 Generally, we afford trial judges wide latitude in granting or denying rule 59 motions. See *Pollesche v. Transam. Ins. Co.*, 27 Utah 2d 430, 497 P.2d 236, 238 (Utah 1972) (discussing the "large measure of discretion ... vested in the trial court in refusing or granting a motion for new trial" under rule 59). We grant this discretion because the trial court, having heard the evidence, typically is in a better position to determine whether the grant or denial of a rule 59

---

**6.** Judge Mower also dismissed Sanpete America's claims of fraudulent/negligent misrepresentation and unjust enrichment against Mr. Willardsen. Sanpete America has not appealed the dismissal of these claims.

motion is warranted. *See State ex rel. Rd. Comm'n v. Jensen*, 22 Utah 2d 214, 451 P.2d 370, 371 (1969). Consequently, we generally disturb a trial court's grant or denial of a rule 59 motion only if it constitutes an abuse of discretion. *See Smith v. Fairfax Realty, Inc.*, 2003 UT 41, ¶ 25, 82 P.3d 1064.

¶ 29 However, where a successor judge grants a party's rule 59 motion but did not preside over trial, did not enter the original findings of fact and conclusions of law, and held no evidentiary hearings, no justification exists for granting deference to the successor judge's determinations. This procedural rarity is present here. Judge Bagley was in no better position than an appellate court to determine the propriety of the parties' rule 59 motions, having only the "cold record" to guide him. *See Mann v. Fredrickson*, 2006 UT App 475, ¶ 6, 153 P.3d 768. We therefore review Judge Bagley's grant of Mr. Willardsen's and Mr. Neeley's rule 59 motions under a correction of error standard to the extent that his determinations involved questions of law. *Id.; see also Bankcard Am., Inc. v. Universal Bancard Sys., Inc.*, 203 F.3d 477, 481 (7th Cir.2000) (applying de novo review to questions of law in successor judge's rule 59 order). To the extent that our review turns on facts presented at trial, we defer to Judge Mower's findings of fact, which "shall not be set aside unless clearly erroneous." *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 2, 70 P.3d 35 (internal quotation marks omitted).

## ANALYSIS

¶ 30 Sanpete America appeals rulings from Judge Mower's Memorandum Decision and Judge Bagley's Rule 59 Order. With respect to claims against Mr. Willardsen, the judges addressed two issues that are largely dispositive on appeal: (1) whether Mr. Willardsen conveyed his portion of WR920 to Sanpete America under the Warranty Deed and, if so, (2) whether Mr. Willardsen breached the covenant of warranty by not defending Sanpete America's title in its action against Ms. Gra-

ser. With respect to issues involving Mr. Neeley, the dispositive issues are (1) whether Judge Bagley erred in granting Mr. Neeley's rule 59 motion and, if so, (2) whether Judge Mower erred in dismissing claims against Mr. Neeley after finding his actions did not cause Sanpete America's damages.

¶ 31 We hold that Mr. Willardsen conveyed his portion of WR920 to Sanpete America under the Warranty Deed. We also conclude that Sanpete America's breach of warranty claim fails as a matter of law. Accordingly, we affirm Judge Bagley's Rule 59 Order on these issues and the judgment dismissing Sanpete America's claims against Mr. Willardsen.

¶ 32 With respect to the issues involving Mr. Neeley, we hold that Judge Bagley erred in granting his rule 59 motion because the motion was untimely. Nonetheless, we affirm Judge Mower's finding that Mr. Neeley's actions were not the cause of Sanpete America's damages. We therefore affirm Judge Mower's dismissal of the claims against Mr. Neeley.

## I. MR. WILLARDSEN'S PORTION OF WR920 PASSED TO SANPETE AMERICA UNDER THE WARRANTY DEED [7]

¶ 33 Judge Mower held that Mr. Willardsen's portion of WR920 did not pass to Sanpete America under the Warranty Deed. He reasoned that legal principles regarding appurtenant water rights did not apply to the conveyance because WR920 was represented by shares of stock. He also reasoned that Mr. Willardsen had expressly conveyed different water rights in the Warranty Deed, triggering a statutory exception to the transfer of an appurtenant water right.

¶ 34 Judge Bagley amended Judge Mower's appurtenance ruling. He reasoned that WR920 passed to Sanpete America under the Warranty Deed because South Fork had dissolved decades ago and because Mr. Willardsen had not specifically reserved part of or

---

7. It appears that Sanpete America originally believed it was purchasing 100 percent of WR920. But Sanpete America conceded in its appellate briefs that it seeks damages only for Mr. Willard-

sen's alleged "failure to convey … title to *his portion of*" WR920. We therefore limit our analysis to the conveyance of Mr. Willardsen's 80/144 share of WR920.

separately conveyed his portion of the water right. Thus no statutory exception to the transfer of an appurtenant water right was triggered.

¶ 35 We hold that Mr. Willardsen's portion of WR920 passed to Sanpete America as appurtenant to the Farm under the Warranty Deed. We so hold because (A) Judge Mower's finding that WR920 was not an appurtenance was clearly erroneous, and (B) the statutory exceptions to the conveyance of an appurtenant water right do not apply.

### A. Judge Mower's Finding that WR920 Was Not an Appurtenance Was Clearly Erroneous

¶ 36 The Utah Code provides that "[t]he right to the use of water evidenced by shares of stock in a corporation shall not be deemed appurtenant to land." UTAH CODE ANN. § 73–1–11(4) (Supp.2010).[8] We have consistently held that this statute, as well as its previous iterations, establishes "a rebuttable presumption that the water right represented by shares of stock ... does not automatically pass to a grantee as appurtenant to the land upon which the water is being used at the time of the grant." *Abbott v. Christensen*, 660 P.2d 254, 256 (Utah 1983); *see also Brimm v. Cache Valley Banking Co.*, 2 Utah 2d 93, 269 P.2d 859, 864 (1954). A grantee of land may rebut this presumption, however, with "clear and convincing evidence [1] that said water right was in fact appurtenant and [2] that the grantor intended to transfer the water right with the land, even though no express mention of any water right was made in the deed." *Brimm*, 269 P.2d at 864.

¶ 37 Judge Mower concluded that because WR920 was represented by shares of stock, the rebuttable presumption arose against its conveyance by appurtenance. He further held that the defendants had failed to rebut that presumption by clear and convincing evidence. Judge Bagley amended this conclusion, holding that the rebuttable presump-

tion did not apply because South Fork had dissolved decades ago, and thus Mr. Willardsen owned his share of WR920 as an appurtenance to the Farm at the time of the conveyance.

¶ 38 We affirm Judge Bagley's conclusion that WR920 was appurtenant to the Farm on alternative grounds. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (noting we may affirm a judgment on any ground or theory apparent in the record). We conclude that Judge Mower's finding that the defendants did not rebut the presumption against appurtenance with clear and convincing evidence was clearly erroneous.[9] The facts in the record and in Judge Mower's Memorandum Decision clearly and convincingly establish (1) that WR920 was in fact appurtenant to the Farm and (2) that Mr. Willardsen intended that the water right be conveyed in the Warranty Deed.

1. Clear and Convincing Evidence Establishes that WR920 Was in Fact Appurtenant to the Farm

¶ 39 "Whether [a] water right is ... appurtenant to [a] stockholder's land is a question of fact in each case, as is also whether on a sale of the land the water right passes as [an] appurtenance." *Brimm*, 269 P.2d at 862 (fourth alteration in original) (internal quotation marks omitted). We reverse a trial court's factual determinations only if they are clearly erroneous. *Selvig v. Blockbuster Enter., LC*, 2011 UT 39, ¶ 19, 266 P.3d 691. Under this standard, we overturn a factual finding "only if it is against the clear weight of the evidence." *Wilson Supply, Inc. v. Fradan Mfg. Corp.*, 2002 UT 94, ¶ 12, 54 P.3d 1177 (internal quotation marks omitted).

¶ 40 This court has looked to several factors to determine whether a water right is in fact appurtenant to the land. For example, we have looked to whether the use of the water right on the land greatly increased the land's value, such as irrigation water used

---

8. The execution of the Warranty Deed took place in 1999. Where relevant statutes are substantively similar in their current form, however, we cite the most current version of the Utah Code for convenience.

9. In so holding, we assume for purposes of analysis that the rebuttable presumption against appurtenance arose in this matter.

upon farmlands, which would be "valueless without water." *In re Johnson's Estate*, 64 Utah 114, 228 P. 748, 752 (1924); *see also Abbott*, 660 P.2d at 257 ("[The] land would have comparatively little value without the water."); *Brimm*, 269 P.2d at 864 ("The Land had little value without the water."). We also have found relevant the extent and length of use of the water right upon the land, with particular emphasis on periods that extended beyond the grantor's ownership. *See Abbott*, 660 P.2d at 257 ("[T]he water at issue had been used on the land for over forty years, a period much longer than the current ownership."); *Brimm*, 269 P.2d at 861, 864 (noting that "[t]he water had been used to irrigate the land since 1890," thirty-four years prior to the transaction at issue).

¶ 41 We have noted, however, that use upon the land is not by itself sufficient to rebut the presumption against appurtenance. *Hatch v. Adams*, 7 Utah 2d 73, 318 P.2d 633, 634 (1957), *aff'd on reh'g*, 8 Utah 2d 82, 329 P.2d 285 (1958). Nonetheless, where we have determined that a water right was not appurtenant, our conclusion ordinarily was compelled by facts showing that the water right was put to beneficial use upon other lands or that the water right was sporadically or insubstantially used on the land. *See, e.g., Roundy v. Coombs*, 668 P.2d 550, 552 (Utah 1983) (noting that "only a small portion of the water" had been used on the land, it had been used only once or twice a month, it had little impact on the value of the land, and there was no evidence of an agreement to purchase water); *George v. Robison*, 23 Utah 79, 63 P. 819, 820 (1901) (noting that a third person, not the grantor, owned stock in the water rights and had transferred the rights away from the land conveyed).

■ ¶ 42 The record and Judge Mower's findings of fact clearly establish that WR920 is appurtenant to the Farm. First, the water right had been used on the Farm for a period that extended well beyond the period of ownership of the grantor, Mr. Willardsen. Judge Mower found that Mr. Willardsen purchased Mr. Christensen's share of WR920 and 106 acres of land in 1967, more than three decades before Sanpete America purchased the Farm. More than three decades

before that conveyance, Mr. Christensen drilled the well and filed an underground water claim for irrigating the land.

¶ 43 Second, the use of WR920 was not limited to a small portion of the Farm or used sporadically. Judge Mower found that "Mr. Willardsen irrigated the entire farm" using the water right. Such a finding is the hallmark of appurtenance. *See Bauer v. Prestwich*, 578 P.2d 1283, 1284 (Utah 1978) ("The use of water upon land makes it appurtenant to that land . . . .").

¶ 44 Third, although Judge Mower made no finding that the value of the Farm was comparatively little without WR920, this finding is implicit. Judge Mower's findings establish that Sanpete America had planned to finance the purchase of the Farm by selling one hundred acre-feet of water for $3,000 to $4,000 per acre-foot, demonstrating that the water right greatly enhanced the value of the Farm. As this court has noted in the context of appurtenant water rights, "[i]n this arid country, in most cases, 'farm lands' are valueless without water." *In re Johnson's Estate*, 228 P. 748, 752 (Utah 1924).

¶ 45 Despite this evidence, Judge Mower determined that WR920 was not appurtenant for two reasons. "First, a portion of [the Farm] sold to [Sanpete America] was outside the place of use of water right 65–920. Second, [Sanpete America] received a portion of water right 65–920 sufficient to irrigate 112.07 acres with 110 acres of land." We conclude that neither of these findings negates the clear weight of the evidence demonstrating WR920's appurtenance to the Farm.

¶ 46 First, it is not relevant that three acres of the Farm sold to Sanpete America were outside the approved place of use of the water right. Surely many real estate transactions include lands that are outside the place of use of a water right. But this should have no bearing on the appurtenance of a water right if land *within* the place of use is conveyed along with the water right. *See Bauer*, 578 P.2d at 1284 ("The use of water upon land makes it appurtenant to that land . . . ."). It is undisputed that nearly 107 acres of the Farm was within the water right's place of use.

¶47 Second, the fact that WR920 could irrigate more acreage than was conveyed to Sanpete America does not negate the water right's appurtenance to the Farm. It may, however, be relevant to the *extent* of the water right's appurtenance. *See Little v. Greene & Weed Inv.,* 839 P.2d 791, 796 (Utah 1992) ("[A] vested water right is considered appurtenant to the land conveyed only to the extent that it is used to the land's benefit at the time of the conveyance."); *Roberts v. Roberts,* 584 P.2d 378, 379–80 (Utah 1978) ("Appurtenant water is the amount of water beneficially used on the land before and at the time of the sale." (internal quotation marks omitted)). Neither party has disputed the extent of the beneficial use of WR920 on the Farm at the time of the Warranty Deed's execution. We therefore do not view this fact as relevant and are in no position to determine the extent of use of the water right.

¶48 In sum, the length of time that the water right has been used on the land, the extensive nature of that use on the land, and the value of the water right to the land demonstrate that WR920 "is made appurtenant to the land by use on [the] land for its benefit." *In re Johnson's Estate,* 228 P. at 752 (internal quotation marks omitted). We therefore conclude that Judge Mower's finding that the water right was not in fact appurtenant to the Farm was against the clear weight of the evidence and was clearly erroneous.

¶49 Finally, we note that we may also conclude that WR920 was appurtenant to the Farm due to a concession in Sanpete America's complaint. There, Sanpete America claimed it owned Water Right No. 65–1077—a right that stems from the same underground well as WR920—"as an appurtenance to the real property conveyed ... by Warranty Deed of August 7, 1999."

2. Clear and Convincing Evidence Establishes that Mr. Willardsen Intended to Convey His Portion of WR920 to Sanpete America Under the Warranty Deed

¶50 In assessing the intent of the parties to transfer a water right, we have looked primarily to the language of the documents involved in the transaction and to the conduct of the parties. For example, it is highly relevant whether the deed or real estate purchase contract reflects the intent to transfer a water right. *Abbott,* 660 P.2d at 257 ("Finally, and most importantly, the real estate contract ... contains persuasive internal evidence that the parties intended that the water stock be included in the sale."); *Roundy,* 668 P.2d at 551 ("Neither of the deeds nor any of the other documents pertaining to the sale made mention of any intention to sell or transfer any water...."). We also have found it relevant that a deed contains catch-all language indicating that appurtenant water rights are included in the transaction. *See Brimm,* 269 P.2d at 864 ("In the decree of distribution, following the description of the [land], the words, 'together with water right appurtenant thereto' were added.").

¶51 In this case, the evidence is clear and convincing that Mr. Willardsen, the grantor, intended to transfer WR920 to Sanpete America. Judge Mower found that "Mr. Willardsen ... testified that his intention was to transfer every drop of water he had to [Sanpete America]." Sanpete America further conceded in its opening brief before this court that "[a]ll of [Judge Mower's] findings establish that *both parties* intended to have the description of WR920 included in the Warranty Deed" (emphasis added).

¶52 The documents involved in the transaction also clearly establish the parties' intention to convey WR920 under the Warranty Deed. The Land Purchase Agreement, drafted by Mr. Neeley's office, contained the legal description of WR920. The deed present at the closing included the legal description of WR920. Additionally, the August 9 Warranty Deed, although omitting WR920's legal description, contained a catch-all provision stating that it conveyed "[a]ny and all other [w]ater now a part of and belonging to the subject property." WR920 was such a water right.

¶53 We therefore conclude that the evidence reflected in Judge Mower's findings of fact clearly and convincingly establishes that Mr. Willardsen intended to transfer his portion of WR920 to Sanpete America under the

Warranty Deed and that Sanpete America intended the same. When this finding is combined with the clear and convincing evidence that the water right is appurtenant to the Farm, the presumption against appurtenance is rebutted. We therefore conclude that Judge Mower's finding that the defendants had failed to rebut the presumption against appurtenance was against the clear weight of the evidence and thus was clearly erroneous.

### B. The Statutory Exceptions to the Conveyance of an Appurtenant Water Right Are Inapplicable

¶ 54 Under the Utah Code, an appurtenant water right passes automatically with the conveyance of land, subject to three exceptions:

A water right appurtenant to land shall pass to the grantee of the land unless the grantor:

(a) specifically reserves the water right or any part of the water right in the land conveyance document;

(b) conveys a part of the water right in the land conveyance document; or

(c) conveys the water right in a separate conveyance document prior to or contemporaneously with the execution of the land conveyance document.

UTAH CODE ANN. § 73–1–11(1) (Supp.2010).

¶ 55 Here, the exceptions to the conveyance of an appurtenant water right are inapplicable. First, subsection (a) does not apply because Mr. Willardsen did not specifically reserve any part of WR920 in the Warranty Deed. Sanpete America concedes that the deed makes no mention of the water right. Moreover, although the Warranty Deed specifically conveys WR918 and the irrigation pond to Sanpete America, this fact does not equate to a specific reservation of WR920. See Stephens v. Burton, 546 P.2d 240, 241 (Utah 1976) (holding that the con-veyance of one water right did not indicate the express reservation of another). That Mr. Willardsen did not specifically reserve his portion of WR920 is further confirmed by the Warranty Deed's conveyance of "[a]ny and all other [w]ater now a part of or belonging to the subject property."

¶ 56 Subsection (c) is also inapplicable. There is no evidence in the record that Mr. Willardsen separately conveyed his portion of WR920 prior to or contemporaneously with the execution of the Warranty Deed.

¶ 57 Judge Mower determined that Mr. Willardsen's portion of WR920 did not pass to Sanpete America because subsection (b) was triggered. This application of subsection (b) was erroneous. See Gutierrez v. Medley, 972 P.2d 913, 914–15 (Utah 1998) ("The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion[s].") The statute states that "[a] water right ... shall pass to the grantee ... unless the grantor ... conveys a part of the water right in the land conveyance document." UTAH CODE ANN. § 73–1–11(1)(b) (emphases added). The plain language of this provision speaks to individual, distinct water rights. Judge Mower's findings of fact establish that WR920, WR918, and the irrigation pond are individual water rights distinct from one another. Subsection (b) therefore could not apply unless Mr. Willardsen conveyed a portion of WR920, the individual, distinct water right at issue. He did not.

¶ 58 In sum, we hold that Judge Mower's finding that defendants failed to rebut the presumption against appurtenance of WR920 was clearly erroneous. Judge Mower further erred in his interpretation and application of Utah Code section 73–1–11(1). We therefore affirm Judge Bagley's ruling that Mr. Willardsen's portion of WR920 passed to Sanpete America under the Warranty Deed.[10]

---

**10.** Sanpete America has appealed various issues that are predicated on its theory that Mr. Willardsen breached the Land Purchase Agreement by failing to convey WR920 by warranty deed. Specifically, these issues include (1) whether Mr. Willardsen breached the covenant of good faith and fair dealing, and (2) whether Judge Bagley erred in concluding that the Land Purchase Agreement merged into the Warranty Deed. Because we hold that Mr. Willardsen's portion of the water right passed to Sanpete America under the Warranty Deed, these issues are moot and we need not address them.

## II. MR. WILLARDSEN DID NOT BREACH THE COVENANT OF WARRANTY

¶ 59 Sanpete America asserts that, even if Mr. Willardsen's portion of WR920 was conveyed under the Warranty Deed, it "is entitled to recover from Mr. Willardsen for his breach of the covenants of the warranty deed by refusing to defend [title] against Ms. Graser's challenge to his 80/144 portion of the water right." It therefore appeals Judge Mower's determination that "Mr. Willardsen did not breach any warranties" and Judge Bagley's conclusion that Mr. Willardsen did not breach the Warranty Deed because he conveyed clear title to his portion of WR920. We affirm the conclusions of both judges on the ground that Sanpete America's breach of warranty claim fails as a matter of law.

¶ 60 Certain covenants of title "inhere in a warranty deed as long as the deed is properly executed." [11] *Holmes Dev., LLC v. Cook*, 2002 UT 38, ¶ 33, 48 P.3d 895. The Utah Code provides five such covenants from a grantor:

(i) the grantor lawfully owns fee simple title to and has the right to immediate possession of the premises;

(ii) the grantor has good right to convey the premises;

(iii) the grantor guarantees the grantee, the grantee's heirs, and assigns in the quiet possession of the premises;

(iv) the premises are free from all encumbrances; and

(v) the grantor, the grantor's heirs, and personal representatives will forever warrant and defend the title of the premises in the grantee, the grantee's heirs, and assigns against all lawful claims whatsoever.

UTAH CODE ANN. § 57–1–12(2)(c) (2010). This court has commonly referred to the five covenants as (1) the covenant of seisin, (2) the covenant of right to convey, (3) the covenant of quiet enjoyment, (4) the covenant against encumbrances, and (5) the covenant of warranty.[12] *Holmes Dev.*, 2002 UT 38, ¶ 33, 48 P.3d 895.

¶ 61 Sanpete America contends that Mr. Willardsen breached the covenant of warranty because he did not defend Sanpete America's title in its action against Ms. Graser. Sanpete America understands the covenant of warranty to "expressly provide[ ] protection against, and remedies for, clouded title." This understanding is incorrect.

¶ 62 The covenant of warranty dictates that a grantor shall defend title against "lawful claims," which this court has interpreted as meaning "rightful claims." *Id.* ¶ 46. A grantee may not recover for the breach of the covenant of warranty unless the grantee has been evicted, either actually or constructively, "by one with paramount or better title." *Id.* ¶ 47. "Paramount title is one that would *prevail* over another title in an action or one that would be otherwise *successfully asserted* against another's title." *Id.* ¶ 48 (emphases added). If a claim of paramount title has been defeated, "the grantee cannot show eviction and the grantor has not breached the covenant[ ] of warranty." *Id.* ¶ 49. In other words, the bare assertion of clouded title does not give rise to a duty to defend title under the covenant of warranty. *See Travis v. Midway Oil Corp.*, 144 F.Supp. 863, 866 (D.Wyo.1956) ("The mere showing of a cloud on the title is insufficient."); *Stevenson v. Ecklund*, 263 Mont. 61, 865 P.2d 296, 299 (1993) ("The mere showing of a cloud on the title is not sufficient to establish a breach [of warranty]."); *see also Black v. Patel*, 357 S.C. 466, 594 S.E.2d 162, 166 (2004) ("[W]e follow the general rule that where a covenantee successful-

---

Sanpete America also conceded before the trial court and in its appellate briefs that a finding of appurtenance foreclosed its pursuit of breach of contract damages, but not its pursuit of attorney fees for breach of warranty. We address Sanpete America's warranty claim in Part II of this opinion.

11. The parties have not challenged the execution of the Warranty Deed.

12. Sanpete America has adequately briefed only the fifth covenant—the covenant of warranty. We therefore consider only that covenant. *See Angilau v. Winder*, 2011 UT 13, ¶ 27, 248 P.3d 975 (explaining that we disregard a party's arguments that fail to develop authority and provide reasoned analysis).

ly defends title, he is not entitled to attorneys' fees from the covenantor.").

¶ 63 Sanpete America's breach of warranty claim fails as a matter of law because it was not forced to defend against a lawful, rightful claim to its portion of WR920. Ms. Graser did not possess paramount title that constructively evicted Sanpete America. Rather, Sanpete America *prevailed* in its quiet title action against Ms. Graser. The result of the litigation was that Sanpete America retained the same portion in WR920 as it had asserted prior to the litigation. Accordingly, Sanpete America's claim that its title in WR920 was clouded is insufficient to give rise to a breach of the covenant of warranty.[13]

■■■ ¶ 64 We hold that, without a lawful claim of paramount title by Ms. Graser, no breach of the covenant of warranty occurred. We therefore affirm both Judge Mower's and Judge Bagley's determinations that Mr. Willardsen did not breach warranties in the deed.[14]

### III. SANPETE AMERICA'S CLAIMS AGAINST MR. NEELEY WERE PROPERLY DISMISSED

¶ 65 Sanpete America disputes the propriety of Judge Bagley's grant of Mr. Neeley's rule 59 motion and Judge Mower's determination that Mr. Neeley's acts did not cause Sanpete America's damages.[15] We hold Judge Bagley erred in granting Mr. Nee-

ley's rule 59 motion. However, we decline to disturb Judge Mower's finding that Mr. Neeley's actions did not result in Sanpete America's damages. We therefore affirm the dismissal of Sanpete America's claims against Mr. Neeley.

#### A. *Judge Bagley Erred in Granting Mr. Neeley's Rule 59 Motion*

■■■ ¶ 66 Sanpete America asserts that Judge Bagley erred as a matter of law in granting Mr. Neeley's untimely rule 59 motion. We agree because Mr. Neeley filed his motion beyond the time limitation contained in the rule.

■■■ ¶ 67 A motion to alter or amend a judgment under rule 59(e) of the Utah Rules of Civil Procedure "shall be served not later than 10 days after entry of the judgment." A district court "may not extend the time for taking any action under [Rule 59(e)] except to the extent and under the conditions stated in [the rule]." UTAH R. CIV. P. 6(b). Rule 59(e) contains no conditions extending the timeliness of service beyond the ten-day limit. Consequently, when a rule 59 motion is served later than ten days after entry of judgment, "the trial court's only alternative is to deny the motion." *Burgers v. Maiben*, 652 P.2d 1320, 1321 (Utah 1982) (per curiam).

¶ 68 The judgment in this case was entered on September 2, 2008, and Mr. Neeley served and filed his rule 59 motion on September 26, 2008. This service was beyond

---

**13.** Sanpete America also challenges Judge Bagley's conclusion that Mr. Willardsen conveyed *clear title* to WR920, which amended Judge Mower's conclusion that the title was *clouded*. We need not determine whether Judge Bagley properly amended Judge Mower's finding of clouded title because Sanpete America's breach of warranty claim fails as a matter of law, even assuming that title to WR920 was clouded.

Moreover, it seems to us an odd choice that Sanpete America pursued a quiet title action in this matter. Although Sanpete America contends that it was "left with no option but to bring a quiet title suit," it seems that another, more appropriate option was available: a partition action. *See* UTAH CODE ANN §§ 78B–6–1201 to–1247 (2008).

**14.** Sanpete America asserts in its reply brief that Mr. Willardsen failed to convey marketable title to WR920. We decline to address this argument for a variety of reasons. First, "we will not

consider matters raised for the first time in [a party's] reply brief." *Coleman ex rel. Schefski v. Stevens*, 2000 UT 98, ¶ 9, 17 P.3d 1122. Second, it is unclear whether Sanpete America bases its argument on breach of contract or on breach of the covenant of title. We will not address inadequately briefed issues. *See Angilau*, 2011 UT 13, ¶ 27, 248 P.3d 975. Finally, it would be inequitable to address Sanpete America's contention that WR920 was not marketable. Mr. Hamilton, Sanpete America's agent, specifically undertook the responsibility of determining the nature and extent, and thus the marketability, of Mr. Willardsen's ownership interest in WR920.

**15.** Mr. Neeley did not file an appellate brief in response to Sanpete America's arguments and did not appear before this court at oral argument.

the ten-day limit set forth in rule 59(e). Mr. Neeley's rule 59 motion was therefore untimely, and Judge Bagley's only course of action was to deny the motion.

¶ 69 We therefore reverse Judge Bagley's Rule 59 Order to the extent that it granted Mr. Neeley's rule 59 motion. This holding leaves only Judge Mower's dismissal of Sanpete America's claims against Mr. Neeley, which we now address.

### B. We Will Not Disturb Judge Mower's Factual Finding that Mr. Neeley's Breaches Did Not Cause Sanpete America's Damages

¶ 70 Judge Mower's Memorandum Decision addressed Sanpete America's three causes of action against Mr. Neeley: (1) breach of the escrow contract, (2) professional negligence, and (3) breach of fiduciary duties. For all three claims, Judge Mower determined that Mr. Neeley's failure to properly prepare the Warranty Deed constituted a breach of his duties to Sanpete America. Nonetheless, he found that these breaches were not the cause of Sanpete America's damages.

¶ 71 Sanpete America contends that Judge Mower erred in not awarding Sanpete America attorney fees due to Mr. Neeley's breaches. Specifically, it argues that "Judge Mower erred *as a matter of law* in failing to award Sanpete America the attorney fees it incurred to quiet title to Mr. Willardsen's portion of WR920 when Sanpete America would have been able to recover those fees from Mr. Willardsen had Mr. Neeley properly prepared a warranty deed conveying Mr. Willardsen's portion of the water right" (emphasis added).[16] We disagree.

¶ 72 A nonbreaching party to a contract may recover damages if those damages "flow naturally from the [other party's] breach." *Cabaness v. Thomas*, 2010 UT 23, ¶ 72, 232 P.3d 486 (internal quotation marks

omitted). A party also may seek "attorney fees as consequential damages, but only in the limited situation where the defendant's [wrongful conduct] foreseeably cause[s] the plaintiff to incur attorney fees through litigation with a third party." *Macris & Assocs., Inc. v. Neways, Inc.*, 2002 UT App 406, ¶ 13, 60 P.3d 1176 (alterations in original) (internal quotation marks omitted). Causation is therefore an integral element of awarding damages in contract and negligence actions, and whether a breach caused a party's damages is ordinarily a question of fact. *See, Goebel v. Salt Lake City S.R.R. Co.*, 2004 UT 80, ¶ 12, 104 P.3d 1185 ("Proximate cause is an issue of fact. . . ."). We will not disturb a finding of fact unless it is clearly erroneous. *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 2, 70 P.3d 35.

¶ 73 Sanpete America has failed to contend that Judge Mower's causation findings are clearly erroneous, and we view his findings as well supported in the record. *See Wilson Supply, Inc. v. Fradan Mfg. Corp.*, 2002 UT 94, ¶ 12, 54 P.3d 1177 (stating a clearly erroneous factual finding is one that is against "the clear weight of the evidence" (internal quotation marks omitted)). Judge Mower repeatedly noted that Mr. Neeley's actions did not cause Sanpete America's damages because its damages did not result from a lack of a warranty deed. In other words, Sanpete America's troubles securing ownership recognition from the Division of Water Rights and its litigation with Ms. Graser were due to Sanpete America's failure to adequately research WR920 prior to the transaction.[17] This was a responsibility that Sanpete America volunteered to shoulder. We therefore see no reason to disturb Judge Mower's causation findings.

¶ 74 Moreover, Sanpete America's claims against Mr. Neeley are fatally undermined by our holding that the Warranty Deed *did* convey Mr. Willardsen's portion of WR920 to Sanpete America. This holding renders

---

**16.** Although Sanpete America makes this argument specifically as to its breach of contract claim against Mr. Neeley, it makes almost identical arguments regarding its professional negligence and breach of fiduciary duty claims.

**17.** In support of this conclusion, Judge Mower's breach of contract analysis refers to his breach of warranty analysis, where he found that "[t]he evidence shows that Mr. Willardsen relied on Mr. Hamilton to find out how much water he owned and to provide an accurate description of the water rights."

moot Sanpete America's arguments that Mr. Neeley's breaches deprived it of the covenants inherent in a warranty deed, resulting in damages in the form of attorney fees. Irrespective of Mr. Neeley's failures, Sanpete America *did* receive a warranty deed with implied covenants.[18] But, as discussed above, these covenants did not require Mr. Willardsen to defend Sanpete America's title in its successful action against Ms. Graser.

¶ 75 Sanpete America is therefore not entitled to damages from Mr. Neeley, and we affirm Judge Mower's judgment dismissing the claims against him.

## CONCLUSION

¶ 76 We affirm Judge Bagley's holding that Mr. Willardsen's portion of WR920 passed to Sanpete America under the Warranty Deed. Judge Mower erred in finding that the defendants did not establish clear and convincing evidence that WR920 was appurtenant to the Farm. Furthermore, as Judge Bagley correctly concluded, the statutory exceptions to conveyance of an appurtenant water right were inapplicable to the facts of this case. Consequently, we affirm Judge Bagley's ruling that Sanpete America is not entitled to the damages it claims from the failure to receive Mr. Willardsen's portion of WR920 by warranty deed.

¶ 77 We also hold that Sanpete America is not entitled to attorney fees incurred in pursuit of its quiet title action against Ms. Graser. As a matter of law, its assertion of clouded title was insufficient to trigger Mr. Willardsen's duty to defend under the covenant of warranty. We therefore affirm Judge Bagley's determination that Sanpete America is not entitled to attorney fees and affirm the judgment dismissing Sanpete America's claims against Mr. Willardsen.

¶ 78 Finally, we conclude that Judge Bagley erred in granting Mr. Neeley's rule 59 motion. Nonetheless, we do not disturb Judge Mower's finding that Mr. Neeley's actions were not the cause of Sanpete Amer-

ica's damages. Sanpete America took on the responsibility of determining the extent and nature of Mr. Willardsen's ownership of WR920, but it failed to do so accurately. According to Judge Mower, it was this failure that caused Sanpete America's alleged damages, not Mr. Neeley's failure to include a description of WR920 in the Warranty Deed. This factual determination is well supported in the record and is not against the clear weight of the evidence. We therefore affirm the judgment dismissing Sanpete America's claims against Mr. Neeley.

¶ 79 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Chief Justice DURHAM'S opinion.

---

**18.** We do not intend to condone Mr. Neeley's actions in conveying Mr. Willardsen's portion of WR920 as an appurtenance to the Farm, rather than by explicitly including a reference to the water right in the deed, as had been directed.

Moreover, we express concern where an attorney acts as both lawyer and escrow agent in a conveyance involving water rights and concedes knowing nothing about the law regarding the conveyance of water.