*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2025 UT 42**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

FARM BUREAU MUTUAL INSURANCE CO.,
*Respondent and Cross-petitioner,*

*v.*

JARED H. WESTON,
*Respondent and Cross-petitioner,*

and

FARMERS INSURANCE EXCHANGE, PREMATIC SERVICE CORP., and
WILSON GREEN INSURANCE AGENCY, INC.,
*Petitioners and Cross-respondents.*

No. 20240024
Heard March 3, 2025
Filed October 17, 2025

On Certiorari to the Utah Court of Appeals

Third District Court, Salt Lake County
The Honorable Royal I. Hansen
No. 050905850

Attorneys*:

Trent J. Waddoups, Salt Lake City, for respondent and
cross-petitioner Farm Bureau Mutual Insurance Co.

Daniel F. Bertch, Salt Lake City, for respondent and
cross-petitioner Jared H. Weston

---

* Additional attorneys for *amicus curiae*, in support of petitioner
and cross-respondents: S. Spencer Brown, Axel Trumbo, Scarlet R.
Smith, Salt Lake City, for Prime Insurance Company; Joshua Sohn,
New York, N.Y., for Complex Insurance Claims Litigation
Association and American Property Casualty Insurance
Association.

Troy L. Booher, Salt Lake City, for petitioners and cross-respondents Farmers Insurance Exchange and Wilson Green Insurance Agency, Inc.

Stuart H. Schultz, Salt Lake City, for petitioner and cross-respondent Prematic Service Corporation

———————

JUSTICE HAGEN authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

———————

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1    This appeal stems from two decades of litigation following an automobile accident. One of the drivers involved in the accident died, and his insurance company paid out benefits and property damages to his estate. The insurer of the deceased driver then sued the driver of the other vehicle, along with the company that allegedly insured the vehicle. When the surviving driver's insurer refused to defend him in the lawsuit, he filed a crossclaim against the insurer, alleging that it had breached its duty to defend him.

¶2    The plaintiff insurer and the surviving driver resolved their dispute through arbitration in which the driver was found responsible for the accident and liable for damages. In March 2009, the district court confirmed the arbitration award and entered judgment. The parties then litigated the remaining issues, including whether the surviving driver was insured at the time of the accident, whether the insurer breached its duty to defend him against the negligence claim, and whether the 2009 judgment has expired. After the final judgment was entered, each of the parties appealed. The court of appeals issued an opinion affirming the judgment in part and reversing in part, which we agreed to review.

¶3    On certiorari, we review the court of appeals' conclusion that the plaintiff insurer's 2009 judgment did not expire. We also review the court's conclusions that the defendant insurer had a duty to defend the surviving driver and that the breach of that duty rendered the defendant insurer liable for the 2009 judgment. And we review the court of appeals' decisions on emotional distress damages and attorney fees.

¶4    We hold that a judgment entered after confirming an arbitration award is a final, appealable order that triggers the eight-year period for the expiration of judgments. Because the 2009 judgment was never enforced, renewed, or stayed, it expired in 2017, and we reverse the court of appeals' decision concluding otherwise, rendering the cancellation issue moot.

¶5    On the issue of the defendant insurer's duty to defend, we affirm the court of appeals' decision that the defendant insurer had a duty to defend because the complaint raised a genuine issue of fact regarding proper cancellation of the policy. Because the defendant insurer refused to defend the action, it breached its duty. However, we do not reach the question of whether that breach made it liable for the 2009 judgment because the judgment is no longer enforceable.

¶6    On the issue of damages, the court of appeals correctly affirmed the district court's finding that the surviving driver failed to prove that the defendant insurer's breach of the duty to defend caused his emotional distress. Finally, we vacate the court of appeals' decision awarding the surviving driver consequential damages for the expired 2009 judgment and contingency-based attorney fees based on that award.

## BACKGROUND

¶7    On February 15, 2004, Jared Weston and LaMoin Larkin were involved in an automobile accident that resulted in Larkin's death. The company that insured Larkin, Farm Bureau Mutual Insurance (plaintiff insurer), paid property damages, personal injury protection benefits, and uninsured motorist benefits to Larkin's estate. After making those payments, the plaintiff insurer stepped into the estate's shoes and filed a claim against Weston for negligently causing the accident.

¶8    In addition to the negligence claim against Weston, the complaint also sought a declaratory judgment that Weston was insured by Farmers Insurance Exchange (defendant insurer) at the time of the accident. The plaintiff insurer further alleged that although the defendant insurer claimed to have cancelled the policy, the cancellation was "not effective." The plaintiff insurer alleged that Weston was indeed insured and that the policy premium had been paid "[a]t all times material" to the case.

¶9    In early 2008, while the declaratory judgment action remained unresolved, Weston and the plaintiff insurer agreed to

arbitrate the negligence claim. The arbitrator found Weston wholly at fault for the accident and determined that he was liable for damages and losses totaling $684,276.36. The plaintiff insurer presented the arbitration award to the court, and on March 26, 2009, the court confirmed the award. In confirming the award, the court ordered that, pursuant to the Utah Uniform Arbitration Act (Arbitration Act), "a judgment conforming to the award shall be entered." *See* UTAH CODE § 78B-11-126(1) ("Upon granting an order confirming . . . an award, the court shall enter a judgment conforming to the award."). The court entered the conforming judgment on the same day. The judgment, which included the award plus interest and costs, totaled $747,233.15.

¶10 The question of whether Weston was insured at the time of the accident still needed to be decided. Additionally, Weston had filed crossclaims against the defendant insurer based on the denial of coverage. Relevant here, he alleged that the defendant insurer breached its duties of good faith and fair dealing by (1) refusing to defend him against the plaintiff insurer's claims even though the complaint's allegations "triggered its duty to defend," and (2) failing to indemnify him for the 2009 judgment. The defendant insurer responded to the allegations by arguing that it had cancelled the relevant policy shortly before the accident, and therefore Weston was not insured under the policy at the time.

¶11 The district court held a four-day bench trial to resolve the cancellation dispute, where it had to sort through a dizzying timeline and decide whether the defendant insurer properly cancelled the policy due to a late payment by Weston's mother.[1] At the conclusion of the trial, the court determined that the defendant insurer had properly cancelled the policy prior to the accident, resulting in no coverage on the day of the accident.[2]

¶12 Following the first bench trial, the defendant insurer and plaintiff insurer cross moved for summary judgment on two issues: (1) whether the defendant insurer owed Weston a duty to defend, and (2) if so, whether it breached that duty. The court answered both questions affirmatively and granted summary judgment in

---

[1] The policyholders with the defendant insurer were Jared Weston's parents.

[2] For a more complete description of the cancellation dispute, see *Farm Bureau Mutual Insurance v. Weston*, 2023 UT App 136, ¶¶ 9–18, 540 P.3d 660.

favor of the plaintiff insurer.[3] The court explained that, under Utah caselaw, an insurer has "a duty to defend any complaint alleging facts which, if proven, would render the insurer liable for indemnification of its insured." (Quoting *Fire Ins. Exch. v. Est. of Therkelsen*, 2001 UT 48, ¶ 21, 27 P.3d 555 (cleaned up).) Reviewing the plaintiff insurer's complaint under that standard, the court noted that the complaint alleged Weston was insured under the defendant insurer's policy at all relevant times and that the defendant insurer "had not complied with the statutory requirements before canceling" the policy. Based on these allegations and the ambiguity around coverage, the court ruled that the defendant insurer "was required to defend until the uncertainties could be resolved against coverage." The court thus determined that the defendant insurer breached its duty to defend by refusing to defend Weston.

¶13 In April 2016, the plaintiff insurer applied for and obtained a writ of execution on the judgment it had obtained against Weston more than seven years earlier. The writ directed the county constable to seize and sell enough of Weston's non-exempt property to satisfy the judgment against him. Weston moved to quash the writ of execution, arguing that under *Jordan Construction Inc. v. Federal National Mortgage Ass'n*, 2017 UT 28, 408 P.3d 296, the 2009 judgment was at that point nonfinal. And therefore "the writ never should have been issued." (Quoting *id.* ¶ 36.) The plaintiff insurer agreed that *Jordan Construction* "was applicable and binding" and as a result ceased its collection efforts.

¶14 The case then moved forward to a second bench trial to determine the damages Weston suffered due to the defendant insurer's breach of its duty to defend. Prior to the bench trial, the court ruled that, as a matter of law, Weston could not recover damages for the arbitration award. The court explained that to obtain such damages, Weston would need to prove a "causative link" between breach of the duty to defend and the award. That link was missing, the court concluded, because Weston had presented no evidence that the arbitration award would have changed if the defendant insurer had defended him.

---

[3] The district court later ruled that the plaintiff insurer lacked standing to litigate the duty to defend issue because the court had resolved the cancellation issue in favor of the defendant insurer. *See id.* ¶ 19.

¶15 The court also issued a ruling outlining the relevant facts that the parties had agreed upon. Those facts included the following:

- Weston tendered his defense to the defendant insurer in 2004.[4]

- The defendant insurer has never agreed to defend Weston for "any portion" of the lawsuit against him.

- Weston hired counsel to represent him.

- Under the fee agreement between Weston and his counsel, Weston must pay a contingency fee of forty percent of any settlement or judgment.

- In defending Weston, his counsel "was committed to protect [him] against the interests of the insurance companies."

- "At arbitration, Weston presented through [his counsel] all evidence concerning his defenses to liability and damages."

- "There is no evidence that a different outcome would have resulted had [the defendant insurer] accepted Weston's tender of defense—the facts supporting Weston's fault and the amount needed to make the Larkin heirs whole would not have changed based on [the defendant insurer's] provision of a defense."

¶16 The district court heard evidence and issued an order on damages. The court found that Weston presented compelling, uncontroverted evidence showing that he experienced significant "worry and anxiety" following the accident, including sleepless nights and stress during the day. The court awarded damages for the emotional distress Weston experienced from the time of the accident until he hired legal counsel. However, the court declined to award damages for distress after Weston hired counsel, reasoning that his distress from that point forward was due solely to his "potential liability in the case" and not to the defendant insurer's breach of its duty to defend.

---

[4] "Tender of defense describes a common-law practice in which a person or entity against whom an action is brought gives notice of the suit to a person or entity that may ultimately be liable for payment of the judgment." *Summerhaze Co., L.C. v. FDIC,* 2014 UT 28, ¶ 3 n.2, 332 P.3d 908 (cleaned up).

¶17 The court also awarded Weston attorney fees equal to forty percent of the emotional distress damages, based on the forty-percent contingency fee agreement between him and his counsel.

¶18 After the court issued its ruling on damages, the defendant insurer asked the court to amend its decision. The defendant insurer again argued that because it did not insure Weston at the time of the accident, it owed him no duty to defend.

¶19 The defendant insurer also challenged the court's award of emotional distress damages, arguing that Weston's testimony was insufficient to support those damages. Weston had testified that, following the accident, he felt distressed due to his lack of insurance coverage and the judgment against him from the plaintiff insurer. He had also stated that he felt "the end result wouldn't be near as stressful if [the defendant insurer] at least . . . provided an attorney" and that, if things had been different, the case "would have drastically changed." In the defendant insurer's view, Weston's distress over his lack of insurance and the judgment did not prove he was specifically distressed by the defendant insurer's failure to defend him. And although Weston testified that he believed the outcome would have changed if the defendant insurer had defended him, the defendant insurer argued that this testimony could not override the stipulated finding that "[t]here is no evidence that a different outcome would have resulted" if the defendant insurer had defended him.

¶20 The district court amended its earlier judgment on damages. It upheld its previous ruling that, due to the coverage ambiguity created by the complaint, the defendant insurer had breached its duty to defend by refusing Weston's tender of defense. However, the court reversed its prior award of emotional distress damages, agreeing with the defendant insurer that Weston had not provided sufficient evidence to support those damages. As a result, the court reduced Weston's emotional distress damages to $0. In line with this reduction, the court also reduced Weston's contingency-based attorney fees to $0.

¶21 After the court issued its revised ruling on damages in 2018, the plaintiff insurer asked the court to amend the judgment it had entered against Weston in 2009. The proposed amendment did not alter the underlying arbitration award. Instead, it sought to increase the judgment amount to reflect the interest that had accrued since the court entered the 2009 judgment, as well as costs relating to the judgment.

¶22 Both Weston and the defendant insurer challenged the proposed amended judgment. They argued that the 2009 judgment could not be amended because it had expired under Utah Code section 78B-5-202(1)(a) (judgment-expiration provision). Under the judgment-expiration provision, "[j]udgments shall continue for eight years from the date of entry in a court unless previously satisfied, renewed, or unless enforcement of the judgment is stayed in accordance with law." UTAH CODE § 78B-5-202(1)(a).[5] A judgment may also be renewed for an additional eight years. *See id.* §§ 78B-6-1802, -1804.[6] Weston and the defendant insurer argued that the plaintiff insurer's judgment had expired because it was entered more than eight years earlier and had neither been stayed nor renewed.

¶23 The district court ruled that the 2009 judgment against Weston had not expired, rejecting the arguments from Weston and the defendant insurer. The court explained that the 2009 judgment based on the order confirming the arbitration award was not a final, enforceable judgment under the judgment-expiration provision because it did not resolve all the claims in the case. *See* UTAH R. CIV. P. 54(b) (creating the general rule that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties"). Because the court determined that the 2009 judgment was not a final judgment subject to the judgment-expiration provision, it concluded that the order had not expired and could still be amended. Consequently, the court amended the judgment, which totaled $934,405.43 with interest and costs included.

¶24 The plaintiff insurer appealed, and both the defendant insurer and Weston cross-appealed. *See Farm Bureau Mut. Ins. v. Weston*, 2023 UT App 136, ¶ 24, 540 P.3d 660. As relevant to our decision today, the court of appeals reviewed the district court's rulings on the following issues: (1) whether the 2009 judgment had

---

[5] The legislature has recently amended Utah Code section 78B-5-202. But those amendments to not alter our analysis or conclusion, so for convenience we cite the current version.

[6] The legislature has also amended sections 78B-6-1802 and 1804 during the pendency of this litigation. But again, those changes do not alter our decision, so for convenience we cite the current versions.

expired, (2) whether the defendant insurer had properly cancelled Weston's insurance policy, (3) whether the defendant insurer breached its duty to defend, and (4) whether Weston was entitled to damages for the defendant insurer's breach of the duty to defend. *Id.* ¶¶ 25–28.

¶25 The court of appeals affirmed the first three rulings—on expiration, cancellation, and breach. *Id.* ¶¶ 42, 60, 71. The court also partially affirmed the fourth ruling—on damages—agreeing with the district court that Weston had not shown he suffered emotional distress from the breach of the duty to defend. *Id.* ¶ 93. But in a split decision, the court reversed the district court's ruling that Weston was not entitled to damages for the arbitration-award judgment. *Id.* ¶¶ 85–86.

¶26 The court split on whether an insurer that breaches its duty to defend can later challenge its liability for the judgment that it refused to defend against. The majority interpreted Utah caselaw to "preclude[] an insurer who breaches the duty to defend from raising coverage defenses or otherwise challenging the judgment entered against the party to whom it owed the duty." *Id.* ¶ 77. Under this rule, which the court noted was akin to the so-called "Illinois rule," the defendant insurer's breach of the duty to defend automatically bound it to compensate Weston for the plaintiff insurer's subsequent judgment against him. *Id.* Applying that rule, the court held that the defendant insurer owed Weston damages for the arbitration-award judgment, plus costs and interest, as well as attorney fees amounting to forty percent of the total amount. *Id.* ¶ 104. The dissent concluded that while Utah appellate courts have not directly addressed this issue, "several Utah cases have . . . signaled an affinity for the majority rule," which allows insurers that breach their duty to defend to later contest the scope of coverage, rather than the Illinois rule. *Id.* ¶¶ 105, 109 (Harris, J., concurring in part and dissenting in part).

¶27 The defendant insurer filed a petition for writ of certiorari, and the plaintiff insurer and Weston filed cross-petitions. We granted review.

## ISSUES AND STANDARDS OF REVIEW

¶28 "On a writ of certiorari, we review the decision of the court of appeals, not that of the district court, and apply the same standard[s] of review used by the court of appeals." *Prinsburg State Bank v. Abundo*, 2012 UT 94, ¶ 10, 296 P.3d 709 (cleaned up). In

doing so, "we grant no deference to the court of appeals' decision." *Pinney v. Carrera*, 2020 UT 43, ¶ 14, 496 P.3d 970.

¶29  In petitioning this court for review, the parties challenge several aspects of the court of appeals' decision—some of which are challenged by only one party and others that are challenged by multiple parties.[7] We list the issues in the order we analyze them below and summarize them as follows: (1) whether the 2009 judgment expired, (2) whether the defendant insurer properly cancelled Weston's insurance policy, (3) whether the defendant insurer breached its duty to defend, and (4) whether Weston was entitled to damages for the defendant insurer's breach of the duty to defend.

¶30  First, we address whether the court of appeals erred in concluding that the 2009 judgment entered pursuant to the arbitration award between the plaintiff insurer and Weston did not expire. Whether the 2009 judgment is final and enforceable is governed by various statutory provisions and our rules of procedure. Interpretation of statutes and procedural rules is a question of law we review for correctness. *See Bearden v. Croft*, 2001 UT 76, ¶ 5, 31 P.3d 537 ("Correctness is . . . the standard for review of questions of statutory interpretation."); *Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 29, 469 P.3d 989 ("The interpretation of a rule of procedure is a question of law that we review for correctness." (cleaned up)).

¶31  Second, the issue of whether the defendant insurer properly cancelled the insurance policy involves various sub-issues that the district court resolved after a bench trial and the court of appeals subsequently affirmed. But as addressed below, we decline to reach the merits of this issue—along with the corresponding sub-issues—because the expiration of the 2009 judgment renders it moot. *See infra* Part II.

¶32  Third, we address whether the defendant insurer breached its duty to defend. The court of appeals affirmed the district court's

---

[7] The parties do not challenge all the issues addressed in the court of appeals' decision. In particular, the parties do not challenge the court of appeals' ruling on the issue of the duty of good faith and fair dealing. *See Farm Bureau Mut. Ins. v. Weston*, 2023 UT App 136, ¶¶ 97–99, 540 P.3d 660. Nor do any of the parties challenge the court of appeals' reversal of the district court's award of costs to the plaintiff insurer from the 2009 judgment. *See id.* ¶ 102.

grant of summary judgment, which ruled that the defendant insurer had breached its duty to defend. *Farm Bureau*, 2023 UT App 136, ¶¶ 64–71. A district court's grant of summary judgment is reviewed for correctness. *See Fire Ins. Exch. v. Est. of Therkelsen*, 2001 UT 48, ¶ 11, 27 P.3d 555.

¶33 Fourth, we address whether Weston was entitled to damages for the defendant insurer's breach of the duty to defend. The defendant insurer challenges the court of appeals' award of consequential damages and attorney fees based on the 2009 judgment. Because we conclude that the 2009 judgment is no longer enforceable, we vacate the court of appeals' decision on consequential damages. Additionally, Weston challenges the court of appeals' decision to uphold the district court's finding that Weston failed to prove that the defendant insurer's breach of the duty to defend caused Weston emotional distress. An appellate court reviews a district court's factual findings at a bench trial for clear error. *See State ex rel. Z.D.*, 2006 UT 54, ¶¶ 29–34, 147 P.3d 401; *see also* UTAH R. CIV. P. 52(a)(4) ("Findings of fact, . . . must not be set aside unless clearly erroneous."). Finally, we review the court of appeals' decision to award attorney fees for correctness. *See Prinsburg State Bank,* 2012 UT 94, ¶ 10 ("On a writ of certiorari . . . we review the court of appeals' decision for correctness." (cleaned up)).

## ANALYSIS

I. THE PLAINTIFF INSURER'S 2009 JUDGMENT AGAINST WESTON EXPIRED IN MARCH 2017

¶34 We begin by addressing a threshold issue: whether the plaintiff insurer's 2009 judgment against Weston has expired. The defendant insurer contends that because judgments expire eight years after they are entered, *see* UTAH CODE § 78B-5-202(1)(a), the 2009 judgment here expired in 2017, eight years after the district court entered it. For their part, Weston and the plaintiff insurer maintain that the eight-year expiration period did not begin to run until the district court resolved all the claims in the case, and so the judgment remains enforceable. We conclude that the judgment expired in 2017 and therefore is no longer enforceable against Weston or the defendant insurer.

¶35 Utah law dictates how long a judgment lasts after entry: "Judgments shall continue for eight years from the date of entry in a court unless previously satisfied, renewed, or unless enforcement

11

of the judgment is stayed in accordance with law."[8] *Id.* We have held that because judgments cannot be enforced in Utah until they are final, the "notion of judgment" in the judgment-expiration provision "is a *final* one." *Irving Place Assocs. v. 628 Park Ave., LLC*, 2015 UT 91, ¶ 22, 362 P.3d 1241. And we clarified that a "final" judgment, means a judgment that is "appealable." *Id.* ¶ 23 ("[T]he sort of 'judgment' spoken of . . . is the final (appealable) kind."); *see also id.* ¶ 23 n.9 (recognizing "the existence of exceptions to the final judgment rule"). Thus, under the judgment-expiration provision, final, appealable judgments "shall continue for eight years from the date of entry in a court." UTAH CODE § 78B-5-202(1)(a); *see also Irving Place*, 2015 UT 91, ¶¶ 20–23. Nonfinal, non-appealable judgments "would continue for longer—for eight years *after* the eventual entry of a final," appealable judgment. *Irving Place*, 2015 UT 91, ¶ 20.

¶36 Given this distinction between final, appealable judgments and nonfinal, non-appealable judgments, we must determine when a judgment is final and appealable to know when the eight-year expiration period begins. Here, the plaintiff insurer's 2009 judgment was entered under the Arbitration Act, so we first look there to assess its appealability. The Arbitration Act, in turn, directs us to the procedural rules governing civil appeals, stating that appeals under the Arbitration Act "must be taken as from an order or a judgment in a civil action." UTAH CODE § 78B-11-129(2).

¶37 Our rules give parties "an appeal as of right," *Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC*, 2012 UT 56, ¶ 11, 289 P.3d 420 (cleaned up), from "a final order or judgment from a district court," UTAH R. APP. P. 3(a)(1). And the rules define "[j]udgment" as including "a decree or order that adjudicates all claims and the rights and liabilities of all parties or any other order from which an appeal of right lies." UTAH R. CIV. P. 54(a). The latter rule, rule 54(a) of the Utah Rules of Civil Procedure, reflects the final judgment rule. That general rule provides that an appeal is improper unless the judgment appealed from "resolves all claims, counterclaims, cross-claims, and third-party claims before the court and fully and finally resolves the case." *WDIS, LLC v. Hi-Country Ests. Homeowners Ass'n*, 2019 UT 45, ¶ 22, 449 P.3d 171 (cleaned up).

---

[8] Judgments may be renewed for an additional eight years. UTAH CODE §§ 78B-6-1802, -1804.

¶38 But "as with nearly every general rule," the final judgment rule comes with exceptions. *Copper Hills Custom Homes, LLC v. Countrywide Bank, FSB*, 2018 UT 56, ¶ 12, 428 P.3d 1133. "These exceptions allow parties to secure appellate review of a nonfinal order in certain circumstances." *Powell v. Cannon*, 2008 UT 19, ¶ 13, 179 P.3d 799. The final judgment rule has three exceptions: "(1) when the legislature provides a statutory avenue for appealing nonfinal orders, (2) interlocutory appeals under rule 5 of the Utah Rules of Appellate Procedure, and (3) a district court's certification under rule 54(b) of the Utah Rules of Civil Procedure." *In re Est. of Heater*, 2021 UT 66, ¶ 14, 498 P.3d 883 (cleaned up).

¶39 The parties here agree that the 2009 arbitration-award judgment was not final under the final judgment rule, because other claims remained pending when the district court entered it. We conclude, however, that the judgment fits within the statutory exception to the rule.

¶40 Subsection 129(1) of the Arbitration Act "lists various types of district court decisions from which 'an appeal may be taken.'" *Westgate Resorts*, 2012 UT 56, ¶ 12 (cleaned up) (quoting UTAH CODE § 78B-11-129(1)). "Any ruling listed in subsection 129(1) would give the parties an appeal as of right, which should be pursued under rule 3" of the Utah Rules of Appellate Procedure. *Id.* Among the listed appealable decisions, a party may appeal "an order confirming or denying confirmation of an [arbitration] award," as well as "a final judgment entered pursuant to" the Arbitration Act. UTAH CODE § 78B-11-129(1)(c), (f).

¶41 In this case, the court of appeals held that because the 2009 judgment did not fall under either of these provisions, it did not meet the statutory exception to the final judgment rule and therefore did not trigger the eight-year expiration period. *Farm Bureau Mut. Ins. v. Weston*, 2023 UT App 136, ¶ 41, 540 P.3d 660. As for the first provision—under which a party may appeal an order confirming or denying confirmation of an arbitration award—the court held that the provision did not apply because the district court "entered the 2009 Judgment *after* it entered a separate order confirming the arbitration award." *Id.* And as for the second provision—under which a party may appeal a final judgment entered pursuant to the Arbitration Act—the court of appeals held that the provision did not apply because the judgment was not "final" in the sense that it "did not resolve all the claims of all the parties." *Id.* (citing UTAH R. CIV. P. 54(b)). Under the court's

reading, the parties had an appeal as of right from the district court's *order* confirming the arbitration award, but not from the conforming *judgment* that the court entered the same day. *Id.*

¶42 We read the statute differently. We conclude that the 2009 judgment was appealable under the Arbitration Act because it was "a final judgment entered pursuant to" the act. UTAH CODE § 78B-11-129(1)(f). Because the judgment was appealable, its entry initiated the eight-year judgment expiration period. *See Irving Place*, 2015 UT 91, ¶ 20; UTAH CODE § 78B-5-202(1)(a). And because more than eight years passed since the court entered the judgment, the judgment expired. *See* UTAH CODE § 78B-5-202(1)(a).

¶43 We reach this conclusion using our customary rules of statutory interpretation. When we interpret a statute, "our aim is to ascertain the intent of the legislature." *Rosser v. Rosser*, 2021 UT 71, ¶ 42, 502 P.3d 294 (cleaned up). To further that aim, "we first look to the text of the statute and seek to interpret it in harmony with other statutes in the same chapter and related chapters." *Croft v. Morgan Cnty.*, 2021 UT 46, ¶ 15, 496 P.3d 83 (cleaned up).

¶44 The "surplusage canon"—a "well-established contextual canon[] of statutory construction"—sometimes aids us in discerning the legislature's intent. *Buck v. Utah State Tax Comm'n*, 2022 UT 11, ¶ 42, 506 P.3d 584. That canon "provides that 'if possible, every word and every provision of a statute is to be given effect.'" *Croft*, 2021 UT 46, ¶ 32 (cleaned up) (quoting ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (2012)). No word or provision "should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence." SCALIA & GARNER, *supra*, at 174. But the canon "is not a bright-line rule." *Croft*, 2021 UT 46, ¶ 33. It instead creates a presumption "that statutory language be given operative effect." *Id.* The presumption "is at its strongest" when "an entire statutory provision" would otherwise be rendered "meaningless." *Id.* (cleaned up).

¶45 We find the surplusage canon useful in interpreting subsection 129(1)(f) of the Arbitration Act. That subsection provides, "An appeal may be taken from . . . a final judgment entered pursuant to" the Arbitration Act. UTAH CODE § 78B-11-129(1)(f). The surplusage canon directs us to presume that subsection (1)(f) has an operative effect. *See Croft*, 2021 UT 46, ¶ 33. Yet the entire provision would be stripped of operative effect if the term "final judgment" meant a judgment that resolves all claims

against all parties (i.e., a judgment that is final under the final judgment rule). This is because a party already has an appeal as of right from such a judgment. *See* UTAH R. APP. P. 3(a)(1).

¶46 Accordingly, we presume that subsection (1)(f) does something other than give parties to an arbitration something every party already has—an appeal as of right from a judgment that resolves claims against all parties. We interpret the subsection as giving a party an appeal as of right from a judgment entered after confirming an arbitration award, even if the judgment does not resolve all claims against all parties.

¶47 Our reading of subsection (1)(f) aligns with the design of the Arbitration Act. The legislature has expressly encouraged alternative dispute resolution, including arbitration, "to secure the just, speedy, and inexpensive determination of civil actions." UTAH CODE § 78B-6-203(1). The Arbitration Act seeks to promote that goal by authorizing parties to appeal from the types of decisions listed in subsection 129(1). Subsection 129(1) authorizes appeals from district court decisions that stymie the arbitration process, such as an order denying a motion to compel arbitration or an order granting a motion to stay arbitration. *Id.* § 78B-11-129(1)(a)–(b). But, tellingly, subsection 129(1) does not authorize appeals from district court decisions that move the arbitration process forward, such as an order granting a motion to compel arbitration or an order denying a motion to stay arbitration. This design advances the goal of securing "the just, speedy, and inexpensive determination of civil actions" through alternative dispute resolution. *Id.* § 78B-6-203(1).

¶48 Yet that goal would be frustrated if we were to read subsection 129(1) as excluding appeals from judgments entered after an arbitration award is confirmed. Delaying appeals from those judgments would make the determination of civil actions through alternative dispute resolution slower and more expensive, not speedier and less expensive. *See id.* Indeed, subsection 129(1) expressly authorizes appeals from *orders* confirming arbitration awards. *Id.* § 78B-11-129(1)(c). It only makes sense that the legislature also intended to authorize appeals from the *judgments* that reflect those same appealable orders.

¶49 This reading of subsection 129(1) does not disrupt the purposes of the final judgment rule. The "obvious and principal rationale" for the rule "is to promote judicial economy by preventing piecemeal appeals in the same litigation." *Copper Hills*,

2018 UT 56, ¶ 11 (cleaned up). The rule also seeks to address our concern "that multiple rulings in the same litigation on narrow issues taken out of context may needlessly increase the risk of inconsistent or erroneous decisions." *Id.* (cleaned up). And the rule "maintains the proper relationship between this court and the district courts," giving district courts the chance to revisit and potentially fix any errors. *Id.* (cleaned up); *see also Kennedy v. New Era Indus., Inc.*, 600 P.2d 534, 536 (Utah 1979) ("[T]rial judge[s] should have the opportunity for reconsideration . . . since it facilitates the just and speedy resolution of disputes in the trial court."). These animating concerns are not implicated when a party appeals a judgment confirming an arbitration award, because the Arbitration Act limits grounds for judicial review of arbitration awards and cuts off challenges to awards after ninety days. *See* UTAH CODE §§ 78B-11-125, -126 (imposing substantive and temporal limitations for modifying, correcting, and vacating arbitration awards). The Arbitration Act's built-in limitations make it unlikely that an arbitration award could be affected by a district court's subsequent factual or legal determinations on any remaining, non-arbitrated claims.

¶50   In short, under subsection 129(1)(f) of the Arbitration Act, a judgment entered under the act is final for purposes of appeal, even if it does not resolve all claims against all parties. Here, the plaintiff insurer obtained its arbitration award and brought the award to the district court. The district court entered an order confirming the award on March 26, 2009. On the same day, the court entered judgment on the award. That judgment constituted "a final judgment entered pursuant to" the Arbitration Act, *id.* § 78B-11-129(1)(f), and was therefore appealable as of right. Consequently, the eight-year period in the judgment-expiration provision began to run. *See id.* § 78B-5-202(1)(a). Because the judgment was not satisfied, renewed, or stayed, it expired on March 26, 2017, "eight years from the date of entry." *See id.*

¶51   The plaintiff insurer gives two reasons for disregarding the judgment's expiration. First, it argues that even if the judgment technically expired under the judgment-expiration provision, the judgment should be revived under the "bad faith" exception. (Citing *Free v. Farnsworth*, 188 P.2d 731 (Utah 1948).) That exception applies when "a judgment debtor . . . assert[s] a judgment's expiration as a defense . . . when the debtor acted in bad faith to prevent the judgment creditor from enforcing the judgment." *Gildea v. Wells Fargo Bank, N.A.*, 2015 UT 11, ¶ 19, 347 P.3d 385. But

here, Weston—not the defendant insurer—is the "judgment debtor." The plaintiff insurer has not asserted any bad faith on Weston's part. And while the plaintiff insurer has pointed to the defendant insurer's "limitless appetite[] for vexatious litigation," it has not shown that this purported bad faith in any way hindered the plaintiff insurer's ability to enforce, renew, or seek a stay of its judgment during the eight-year period when it was enforceable.

¶52 Second, the plaintiff insurer questions whether the defendant insurer can assert the judgment's expiration when the judgment is against Weston, noting that Weston chose not to appeal the district court's ruling on expiration. But although Weston chose not to appeal the court's ruling on expiration, the defendant insurer did. And more importantly, the judgment's expiration raises potential justiciability questions affecting other issues on appeal. *See infra* Part II. We could not adequately address those issues without determining whether the judgment expired.

II. THE JUDGMENT'S EXPIRATION MOOTED THE CANCELLATION DISPUTE

¶53 Weston and the plaintiff insurer contend that the court of appeals erred in holding that the defendant insurer cancelled the insurance policy. The cancellation dispute matters because, if the cancellation was invalid, then Weston was covered by the policy on the day of the accident, and the defendant insurer must indemnify him for the judgment. *See Summerhaze Co. v. FDIC*, 2014 UT 28, ¶ 36, 332 P.3d 908 ("An insurer has a duty to indemnify the insured . . . for the payment of a judgment based on a liability claim which is covered." (cleaned up)). The defendant insurer responds that if the plaintiff insurer's judgment expired, then it cannot be obligated to indemnify Weston for a judgment that is no longer enforceable, and so the cancellation dispute is moot. We agree with the defendant insurer.

¶54 "An issue is moot if the requested relief becomes impossible or of no legal effect." *Roussel ex rel. Natalie R. v. State*, 2025 UT 5, ¶ 26, 567 P.3d 550 (cleaned up). This is because if a court cannot give legally effective relief, its decision is "purely advisory." *Transp. All. Bank v. Int'l Confections Co.*, 2017 UT 55, ¶ 15, 423 P.3d 1171 (cleaned up). Because Utah courts do not issue advisory opinions, *Roussel*, 2025 UT 5, ¶ 47, our caselaw instructs that "we lack the power to address the underlying merits of a moot issue," *Grewal v. Junction Mkt. Fairview, L.C.*, 2024 UT 20, ¶ 19, 554 P.3d 863 (cleaned up).

¶55 A judgment's expiration can prevent a court from giving legally effective relief. *See, e.g.*, *Gildea v. Wells Fargo Bank, N.A.*, 2015 UT 11, ¶ 39, 347 P.3d 385 (affirming dismissal of foreclosure action because the underlying judgment expired). Take, for example, *Timothy v. Pia, Anderson, Dorius, Reynard & Moss, LLC*, 2019 UT 69, 456 P.3d 731. There, the Timothys obtained a judgment against the Keetches but were unable to collect because the Keetches claimed not to have any assets. *Id.* ¶¶ 3–4. The Timothys tracked down some assets that they alleged the Keetches had improperly transferred to avoid paying the judgment. *Id.* ¶¶ 5–7. After trying but failing to access those transferred assets, the Timothys filed suit under the Uniform Fraudulent Transfer Act (UFTA). *Id.* ¶¶ 6–7. While the case was pending, however, the Timothys' judgment expired under the judgment-expiration provision. *Id.* ¶ 14.

¶56 On appeal, we held that the Timothys' fraudulent-transfer claim became moot upon the judgment's expiration. *Id.* We explained that the UFTA offers remedies only to "creditor[s] with a claim against [a] debtor." *Id.* ¶ 23. When the judgment expired, the Timothys no longer fit that definition, so their fraudulent-transfer claim became moot. *Id.* ¶ 26.

¶57 The principles underlying our decision in *Timothy* guide us here. The cancellation dispute is relevant to this appeal only because it determines whether the defendant insurer is contractually obligated to indemnify Weston for the judgment. But as we have explained, the plaintiff insurer's judgment expired. *See supra* Part I. When the plaintiff insurer's judgment expired in 2017, Weston's legal obligation to pay expired along with it. By extension, any legal obligation the defendant insurer had to indemnify Weston also evaporated. Because nothing we or the court of appeals could say about the cancellation dispute would have any legal effect, the issue is moot, and we vacate the court of appeals' decision on that point.

### III. THE DEFENDANT INSURER BREACHED ITS DUTY TO DEFEND

¶58 The defendant insurer challenges the court of appeals' holding that it breached its duty to defend Weston in the plaintiff insurer's lawsuit. The court of appeals held that "an insurer may properly decline to offer a defense on the ground that the insurance policy had been cancelled only when there is no genuine issue of fact regarding the cancellation." *Farm Bureau Mut. Ins. v. Weston*, 2023 UT App 136, ¶ 67, 540 P.3d 660. The court went on to affirm the district court's ruling that the defendant insurer had a duty to

defend because the complaint "alleged that [the defendant insurer] had not complied with the statutory requirements before cancelling the insurance coverage for non-payment." *Id*. ¶ 64 (cleaned up).

¶59 The defendant insurer argues that the court of appeals erred because "the sole source of the duty to defend is the insurance contract." (Quoting *Summerhaze Co., L.C. v. FDIC*, 2014 UT 28, ¶ 36, 332 P.3d 908.) It maintains that because it cancelled Weston's policy prior to the date of the accident, it "ha[d] no contractual relationship" with Weston and thus "there [was] no contract from which the duty to defend . . . [Weston] could arise." The defendant insurer further contends that the court of appeals' decision means that "the allegations in the complaint must be considered in isolation," meaning that "the duty to defend can arise even where there is no contract." Weston rebuts the defendant insurer's arguments contending that "the duty to defend *potentially* insured persons is part of the contract." And Weston asserts that there is no dispute that the defendant insurer had a valid insurance contract with him prior to the purported cancellation.[9]

¶60 The defendant insurer is correct that an insurer's "duty to defend arises solely under contract." *Fire Ins. Exch. v. Est. of Therkelsen*, 2001 UT 48, ¶ 22, 27 P.3d 555 (cleaned up). In Utah, "as a general rule, an insurer's duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *Id.* ¶ 21 (cleaned up).

¶61 "If the underlying complaint alleges any facts or claims that might fall within the ambit of the policy, the insurer must offer a defense." *Summerhaze*, 2014 UT 28, ¶ 36 (cleaned up). In this sense the duty to defend is broader than the duty to indemnify because

---

[9] The plaintiff insurer has also briefed and presented arguments regarding the defendant insurer's duty to defend. The defendant insurer asks us to disregard those arguments because the district court ruled that the plaintiff insurer lacked standing to address the duty to defend issue. But there is no dispute that Weston had standing to bring a counterclaim based on the duty to defend and that the defendant insured had appellate standing to challenge both the district court's ruling and the subsequent affirmance by the court of appeals. We do not need to determine whether it was proper for the plaintiff insurer to brief the issue because, even disregarding its arguments, we would affirm the court of appeals' decision.

an insurer may have a duty to defend even where it "is ultimately not liable to indemnify the insured." *Est. of Therkelsen*, 2001 UT 48, ¶ 22.

¶62 Generally, an insurer does not have a duty to defend where the alleged covered event occurred after proper cancellation. *See* 14 STEVEN PLITT ET AL., COUCH ON INSURANCE § 201:3, Westlaw (3d ed. June 2025 update) ("It has been held that an insurer has no duty to defend . . . where the alleged event occurred . . . [b]efore the policy went into effect" or "[a]fter the policy had been cancelled."). But "[t]he insurer must make a good faith determination . . . that there is no potential liability under the policy" before refusing a defense. *Deseret Fed. Sav. & Loan Ass'n v. U.S. Fid. & Guar. Co.*, 714 P.2d 1143, 1147 (Utah 1986). This requires that there be "no disputed facts which if proved by the plaintiff at trial would result in liability under the policy." *Id.* Where there are "factual questions [that] render coverage uncertain . . . the insurer must defend until those uncertainties can be resolved against coverage." *Benjamin v. Amica Mut. Ins.*, 2006 UT 37, ¶ 22, 140 P.3d 1210. In other words, "When in doubt, defend." *Id.* (cleaned up).

¶63 The court of appeals held that a genuine factual dispute regarding proper cancellation of an otherwise valid insurance policy renders coverage uncertain and requires the insurer to provide a defense until the cancellation dispute is resolved. *Farm Bureau*, 2023 UT App 136, ¶¶ 67–68. In reaching this holding, the court quoted the Restatement of the Law of Liability Insurance, *see id.* ¶ 67, which states in relevant part:

> An insurer that has the duty to defend . . . must defend until its duty to defend is terminated . . . by declaratory judgment or otherwise, unless facts not at issue in the legal action for which coverage is sought and as to which *there is no genuine dispute* establish that . . . [t]here is no duty to defend because the insurance policy has been properly cancelled.

RESTATEMENT OF LIAB. INS. § 13(3)(e) (A.L.I. 2019) (emphasis added). The court then concluded that "an insurer may properly decline to offer a defense on the ground that the insurance policy had been cancelled only when there is no genuine issue of fact regarding the cancellation." *Farm Bureau*, 2023 UT App 136, ¶ 67.

¶64 We agree with the court's articulation of the rule and its application to the case before us. The defendant insurer argues that because the district court concluded that it had cancelled Weston's

policy prior to the car accident there was no insurance policy in place when the accident occurred and therefore no contractual duty to defend could have arisen. But that ruling occurred four years after Weston's liability for the accident was resolved. At the outset of the litigation, the defendant insurer was aware that there was a genuine dispute over whether it had properly cancelled the policy based on a late payment by Weston's mother. This was not a frivolous claim, but one that required a four-day bench trial and considerable analysis by the district court and the court of appeals to resolve. The ultimate decision in the defendant insurer's favor does not change the fact that there was a genuine dispute regarding coverage that obligated the defendant insurer to defend Weston until that dispute was resolved.

¶65  The defendant insurer argues that under the cancellation rule we adopt, an insurer's duty to defend can be triggered by the allegations in the complaint alone, without any reference to an otherwise valid insurance policy. The defendant insurer fears that "the duty to defend [will] arise[] even in the absence of an operative policy if a person alleges that a policy was in effect." But a party cannot obtain a defense by merely alleging the existence of a policy. Rather, to trigger the duty to defend under the cancellation rule, the alleged insured's complaint must refer to an otherwise valid insurance policy between the insured and the insurer and raise a genuine dispute of fact as to whether that policy had been properly cancelled.

¶66  Moreover, a genuine dispute of fact regarding cancellation does not alter the requirement that the underlying allegations in the complaint must fall within the scope of the policy's coverage. Stated another way, even where there is a genuine dispute of fact regarding cancellation, the allegations in the complaint must still be compared to the terms of the policy to determine if "the complaint alleges a risk within the" policy's terms. *Benjamin*, 2006 UT 37, ¶ 16. This ensures that the insurer's duty to defend is still rooted in the terms of the contract.

¶67  There is no duty to defend if the allegations show that the alleged covered event falls outside the scope of the policy's coverage. For example, in *McCarty v. Parks*, 564 P.2d 1122 (Utah 1977), we held that there was no duty to defend under an insurance contract where the driver was not a named insured and was driving the vehicle without permission at the time of the accident. In such circumstances, even if a dispute over cancellation is

resolved in favor of the insured, the insurer's duty would not be triggered by the policy's terms.

¶68 In contrast, the defendant insurer has never argued that the car accident involving Weston would have fallen outside the policy's scope of coverage if the policy had not been cancelled. As the court of appeals correctly noted, there is no dispute that Weston and the defendant insurer had an otherwise valid insurance contract from which a duty to defend could arise and to which the allegations in the complaint could be compared. *See Farm Bureau*, 2023 UT App 136, ¶ 68. Thus, if the cancellation dispute had been resolved in Weston's favor, the defendant insurer would have a duty to defend Weston in the action brought by the plaintiff insurer. Because the allegations in the complaint raised a genuine dispute over cancellation, the defendant insurer had a duty to defend arising under the contract until that dispute was resolved.

¶69 The defendant insurer fears that requiring insurers to defend an insured where the complaint raises a genuine dispute regarding cancellation means that insurers may be required to defend uninsured persons in lengthy litigation battles. But an insurer in a case involving a dispute over their duty to defend is not without recourse. We have previously stated that an insurer that believes it is not required to defend has two options: (1) it "may either protect its interests through a declaratory judgment proceeding asking the court to determine coverage under an insurance policy" or (2) "it may defend the suit under a reservation of its right to seek repayment later." *Summerhaze*, 2014 UT 28, ¶ 38 (cleaned up).

¶70 In this case, the defendant insurer did neither. The plaintiff insurer did initially file a declaratory judgment action against the defendant insurer when the plaintiff insurer first initiated suit against Weston in 2005. But the district court did not resolve that issue until 2014, and in the interim the court had already entered the 2009 judgment. The defendant insurer argues that this litigation sequence prevented it from "secur[ing] a declaratory judgment in time" because "[the plaintiff insurer] and [Weston] put the cart before the horse" by arbitrating Weston's liability prior to an adjudication of the declaratory judgment action. Whatever the reason for this procedural order of operations, the defendant insurer has not explained why it did not, or could not, resolve the declaratory judgment action in the years prior to the 2009 judgment. Thus, the procedural oddities of this case do not

convince us that the defendant insurer is relieved of its duty to defend.

¶71 In the face of a substantial question regarding whether a policy has been properly cancelled, the insurer seeking to avoid providing a defense bears responsibility for seeking prompt resolution of the question or defending under a reservation of rights. *See McCarty*, 564 P.2d at 1124 (explaining that "any substantial question as to [whether] coverage exists . . . may involve some risk on the part of the insurance company to refuse to defend"). The defendant insurer was aware of the allegations that it had not properly cancelled the policy prior to the accident. In the face of that substantial question—which rendered coverage uncertain—it could have sought a declaratory judgment or defended the case under a reservation of rights. It did not do so. And because the complaint raised a genuine dispute of fact regarding proper cancellation of an otherwise valid insurance contract, the defendant insurer had a duty to defend until its duty was terminated.

IV. THERE IS NO LEGAL OR FACTUAL BASIS FOR AWARDING WESTON DAMAGES FOR THE DEFENDANT INSURER'S BREACH OF THE DUTY TO DEFEND

¶72 Finally, we must address the issue of whether the defendant insurer is liable to pay Weston damages for breaching its duty to defend. The court of appeals addressed three types of damages: damages based on the 2009 judgment, emotional distress damages, and attorney fees.[10] We address each in turn.

---

[10] Weston also presented an argument regarding punitive damages. He argues that there are grounds for the defendant insurer to be liable for punitive damages and requests that we remand the issue for further proceedings. But the issue is not properly before us because the issue was not raised in the court of appeals and thus was not included in the order granting certiorari. *See DeBry v. Noble*, 889 P.2d 428, 444 (Utah 1995) ("Issues not raised in the court of appeals may not be raised on certiorari unless the issue arose for the first time out of the court of appeals' decision."); *see generally Farm Bureau Mut. Ins. v. Weston*, 2023 UT App 136, ¶¶ 72–96, 540 P.3d 660 (discussing consequential damages, emotional distress damages, and attorney fees). We therefore decline to address it.

A. *The Court of Appeals Erred in Awarding Weston Damages*
   *Based on the Expired 2009 Judgment*

¶73 First, the court of appeals addressed whether the defendant insurer was liable to Weston for any judgment entered against him because the defendant insurer breached its duty to defend. It was on this issue that the court of appeals panel split over the so-called "Illinois rule" versus the "majority rule"—an issue not previously addressed by Utah appellate courts.

¶74 The majority of the court of appeals adopted the Illinois rule, *see Farm Bureau Mut. Ins. v. Weston*, 2023 UT App 136, ¶¶ 73–86, 540 P.3d 660, which provides that an insurer that does not seek a declaratory judgment regarding its duty to defend and refuses to defend an insured under a reservation of rights risks "a finding that would require it to indemnify the insured for any liability the insured incurs in the underlying action," *Roman Cath. Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565–66 (7th Cir. 1998) (applying Illinois law). In essence, under this rule, if the insurer fails to seek a declaratory judgment or defend the suit under a reservation of rights it "is estopped from raising policy defenses to coverage." *Hunt v. State Farm. Mut. Auto. Ins. Co.*, 994 N.E.2d 561, 566 (Ill. App. Ct. 2013). Accordingly, the majority concluded that the defendant insurer was liable to Weston for damages "equal to the amount of the 2009 Judgment entered against him." *Farm Bureau*, 2023 UT App 136, ¶ 73.

¶75 Judge Harris, dissenting, argued that Utah caselaw was more in line with the majority rule. *See id.* ¶¶ 109–33 (Harris, J., concurring in part and dissenting in part). The majority rule, as articulated in other jurisdictions, provides that an "insurer's unjustified refusal to defend does not estop it from later denying coverage under its duty to indemnify." *Id.* ¶ 107 (quoting 1 Allan D. Windt, INSURANCE CLAIMS & DISPUTES: REPRESENTATION OF INSURANCE COMPANIES & INSUREDS § 4:37 (6th ed. 2023)). Judge Harris reviewed various cases from this court and contended that the holdings in those cases signaled that Utah follows the majority rule. Judge Harris then concluded that "[the defendant insurer] would not be estopped, merely by virtue of its breach of its duty to defend [Weston], from raising coverage defenses later." *Id.* ¶ 129.

¶76 As meritorious as the debate regarding the Illinois rule versus majority rule may be, our decision on this issue is grounded elsewhere. As we explained, the 2009 judgment expired by operation of law. *See supra* Part I. As a result, Weston is no longer

liable for any judgment in the action brought against him and there is no basis for awarding damages to Weston based on the 2009 judgment. Therefore, we need not decide whether Utah follows the Illinois rule or the majority rule because there is no longer a valid judgment that the defendant insurer could be ordered to pay. Any decision on this issue would be of no legal effect, *see also Roussel ex rel. Natalie R. v. State*, 2025 UT 5, ¶ 26, 567 P.3d 550, and would result in an advisory opinion, *see also Transp. All. Bank v. Int'l Confections Co.*, 2017 UT 55, ¶ 15, 423 P.3d 1171.

¶77 Accordingly, we vacate the court of appeals' decision regarding the Illinois rule versus majority rule. And we likewise vacate the court of appeals' award of damages to Weston in the amount equal to the 2009 judgment. In doing so, we make clear that this issue remains an open question of law in Utah.

*B. The Court of Appeals Correctly Affirmed the District Court's Determination that Weston Had Not Proven that the Defendant Insurer Caused Weston Emotional Distress*

¶78 Next, Weston challenges the court of appeals' decision to affirm the district court's "determination that [Weston] had not proven that he suffered emotional distress as a result of [the defendant insurer's] failure to defend against [the plaintiff insurer's] lawsuit." *Farm Bureau*, 2023 UT App 136, ¶ 93. At the conclusion of the second bench trial, the district court initially awarded Weston damages for the emotional distress he experienced from the time of the accident until he hired legal counsel. The defendant insurer then moved to amend the judgment pursuant to Utah Rule of Civil Procedure 52, arguing, in part, that Weston had failed to prove that his emotional distress was caused by the defendant insurer's breach of the duty to defend. The district court agreed and ruled that Weston had not proven "that he suffered damages caused by [the defendant insurer's] breach of the duty to defend." The court issued an amended ruling in which it vacated its initial damage award.

¶79 In its opinion affirming the district court's ruling that Weston failed to prove causation, the court of appeals stated that it was reviewing the decision for abuse of discretion. *Farm Bureau*, 2023 UT App 136, ¶ 28. But "whether a breach caused a party's damages is ordinarily a question of fact." *Sanpete Am., LLC v. Willardsen*, 2011 UT 48, ¶ 72, 269 P.3d 118. When an issue is tried to the bench, the district court itself is the fact finder, weighing the evidence and making factual findings in the first instance. Our

rules provide that the district court must state its findings of fact on the record but, upon motion of a party, "may amend its findings or make additional findings." UTAH R. CIV. P. 52(a)–(b). And on appeal, those "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the credibility of the witnesses." *Id.* R. 52(a)(4).

¶80 In this case, once the district court determined that the defendant insurer had breached the duty to defend, the court held a second bench trial at which Weston had the opportunity to prove that he suffered damages as a result of that breach. Because the district court itself was acting as factfinder, rule 52(a)(4) instructs that its findings on causation are reviewed for clear error. The same standard of review applies even though the district court chose to amend its findings under rule 52(b).[11]

¶81 An appellate court "will set aside a district court's factual finding as clearly erroneous only if it is against the clear weight of the evidence, or if [the appellate court] otherwise reach[es] a definite and firm conviction that a mistake has been made." *Ashby v. State*, 2023 UT 19, ¶ 46, 535 P.3d 828 (cleaned up). We affirm the court of appeals' decision because the district court's factual finding on causation was not against the clear weight of the evidence.

¶82 Under Utah law, an insurer that breaches its duty to defend can be found liable for different kinds of consequential damages, such as damage to an individual's credit rating or for emotional distress. *See Campbell v. State Farm Mut. Auto. Ins. Co.*, 840 P.2d 130, 139 (Utah Ct. App. 1992); *Gregory & Swapp, PLLC v. Kranendonk*, 2018 UT 36, ¶ 43, 424 P.3d 897. But to recover such damages, "the plaintiff must provide evidence that does more than merely give rise to speculation that damages in fact occurred; it must give rise to a reasonable probability that the plaintiff suffered

---

[11] If Weston was challenging the district court's willingness to reconsider the evidence and amend the judgment, we would review that decision for an abuse of discretion. *Eskelsen v. Theta Inv. Co.*, 2019 UT App 1, ¶ 22, 437 P.3d 1274. But we understand Weston to be challenging the district court's amended judgment concluding that Weston had not proven that his alleged emotional distress was caused by the breach of the duty to defend, which is a factual finding reviewed for clear error.

damage[s] *as a result of* a breach." *Gregory & Swapp*, 2018 UT 36, ¶ 43 (cleaned up) (emphasis added). And "an abundance of evidence as to breach of duty cannot make up for a deficiency of evidence as to causation." *Id.* ¶ 38 (cleaned up).

¶83 At the second bench trial, Weston presented evidence that he suffered emotional distress due to the litigation and the potential of being uninsured. Weston testified that, following the accident, he felt distressed due to his lack of insurance coverage and the judgment against him from the plaintiff insurer. He also stated that he felt "the end result wouldn't be near as stressful if [the defendant insurer] at least . . . provided an attorney" and that, if things had been different, the case "would have drastically changed." Based on this testimony, the district court in its initial judgment awarding Weston emotional distress damages concluded that "Weston presented compelling evidence at trial that he did, in fact, suffer severe mental distress and anxiety as a result of [the defendant insurer's] breach of the duty to defend."

¶84 But in its ruling amending the judgment, the court reevaluated the evidence and found "that the majority of the stress Weston . . . experience[d] was caused by the judgment entered in this matter" and not the defendant insurer's refusal to provide a defense. The court also concluded that Weston's testimony that he would not have experienced as much stress and that things would have been different had the defendant insurer provided an attorney was contradicted by Weston's stipulation that there was "no evidence that a different outcome would have resulted had [the defendant insurer] accepted Weston's tender of defense."

¶85 As illustrated by the district court's contrasting rulings, more than one conclusion could be drawn from the factual record. Weston's testimony presents some evidence that he suffered emotional distress due to the breach of the duty to defend. But there was also testimony and stipulations to the contrary. The competing evidence on this issue could support inferences both in favor and against awarding emotional distress damages. In other words, it was a close call.

¶86 Under the clear error standard of review, appellate courts "must forebear disturbing the 'close call.'" *In re Interest of Z.D.*, 2006 UT 54, ¶ 33, 147 P.3d 401. We will "only disturb findings that offend the clear weight of the evidence." *Id.* (cleaned up). The district court had an opportunity to hear Weston's testimony and the other evidence and ultimately concluded that Weston had not proven

that he suffered emotional distress as a result of the defendant insurer's breach. Although another fact finder may have weighed the evidence differently, the district court's assessment that Weston's emotional distress was caused by his potential liability, his lack of insurance coverage, and the judgment entered against him—rather than the refusal to provide a defense—is not contrary to the clear weight of the evidence. Therefore, the court of appeals correctly affirmed the district court's decision.

C. *The Court of Appeals Erred in Awarding Weston Contingency-Based Attorney Fees Based on the Expired 2009 Judgment*

¶87 Weston hired his own counsel under a contingency fee agreement after the defendant insurer refused him a defense. Under that agreement, Weston's counsel was entitled to forty percent of any award recovered in the action. Weston's counsel served the dual role of defending him in the action brought by the plaintiff insurer while also pursuing crossclaims against the defendant insurer. As far as we can tell from the record, Weston would only be obligated to pay his attorney if he recovered in his crossclaims against the defendant insurer—where he assumed a traditional plaintiff posture. But Weston would not incur any obligation to pay his attorney if he prevailed against the plaintiff insurer (but otherwise failed to recover on his crossclaim)—as a successful defense would not lead to any monetary recovery from the plaintiff insurer.[12]

---

[12] At the second bench trial, Weston's attorney attempted, unsuccessfully, to admit proffered testimony that at the time Weston entered the agreement with his attorney "they believed that [the defendant insurer] would accept defense of the underlying action and [Weston's counsel] would not be required to expend time and costs to provide Weston a defense and the Attorney/Client Contract only applied to [counsel's] work done in furtherance of Weston's affirmative claims against [the defendant insurer] and others." But this proffered evidence was contradicted by Weston's own testimony that he "did not believe he owed or would ever owe his attorneys any fees or costs unless and until a recovery were made on his behalf." The district court rejected the proffered testimony and ultimately found that Weston presented no evidence that he expended or incurred any attorney fees or costs

(continued . . .)

¶88 Weston has advanced several arguments as to why he should recover attorney fees as consequential damages for the defendant insurer's breach of its duty to defend. But his arguments are less than clear on this point. Weston spends little time defending the court of appeals' award of contingency-based attorney fees as consequential damages. Instead, he appears to argue that the court of appeals erred because it declined to address Weston's arguments for awarding attorney fees "in addition to the contingency fee[]." *See Farm Bureau*, 2023 UT App 136, ¶ 96 n.38. In arguing this point, Weston concedes that his arguments to this court were largely "copy and paste[d]" from the same section of his court of appeals brief.

¶89 Predictably, this "copy and paste" briefing focuses on the purported errors of the district court and does not address the reasoning of the court of appeals. By merely parroting his briefing from the court of appeals to this court, Weston has failed to carry his burden of persuasion to argue that the court of appeals committed error in declining to reach Weston's additional arguments. "An appellant bears the burden of persuasion on appeal, and this burden includes engaging with and responding to the grounds for the decision the appellant is challenging on appeal." *In re Interest of A.B.*, 2022 UT 39, ¶ 39, 523 P.3d 168 (cleaned up). Accordingly, we decline to address Weston's arguments regarding an award of attorney fees in addition to—or even as an alternative to—his contingency fee arrangement. We therefore focus only on the court of appeals' decision to award Weston contingency-based attorney fees.

¶90 The district court initially awarded Weston $128,000 in attorney fees—an amount equal to forty percent of the district court's original $320,000 emotional distress damages award. The district court found that (1) "it was foreseeable to [the defendant insurer] that its refusal to defend would force [Weston] to obtain counsel" and (2) "it was also foreseeable to [the defendant insurer] that counsel would charge a contingent fee of 40% as a result of [the defendant insurer's] breach of the duty to defend." *Farm Bureau*,

_____

under the contingency fee agreement with his attorney. As such, the court of appeals in its opinion relied solely on the contingency fee agreement in discussing an award of attorney fees as consequential damages. *See Farm Bureau*, 2023 UT App 136, ¶¶ 94–96 & n.38. For the reasons explained above, we do the same.

2023 UT App 136, ¶ 96 (cleaned up). But, as noted above, the district court reduced the emotional distress damages award to $0 and as a result reduced the contingency attorney fee award to match.

¶91 On appeal, the court of appeals concluded that the defendant insurer was liable to Weston, not for emotional distress damages, but for the 2009 judgment. *See id.* As such, the court of appeals also concluded that "[Weston] is . . . entitled to an award of 40% of [the 2009 judgment] as attorney fees—which award the [district] court has already determined to be foreseeable." *Id.* ¶ 96.

¶92  Even if we assume that the court of appeals' conclusion on foreseeability was correct, Weston is not entitled to recover damages based on the 2009 judgment because it expired by operation of law. *See supra* Part I. Because the award was based on an expired judgment, we reverse the court of appeals' decision awarding Weston forty percent of the 2009 judgment plus interest and costs as attorney fees.

## CONCLUSION

¶93 After two decades of arbitration, multiple summary judgment rulings, two bench trials, an appeal, and a petition for a writ of certiorari, the parties have finally reached a conclusion to their protracted dispute. We reverse the court of appeals' decision regarding the expiration of the 2009 judgment. Because the judgment has expired, the question of whether the defendant insurer cancelled the insurance policy is moot, and we therefore vacate the court of appeals' decision on that point. We affirm the court of appeals' decision affirming the district court's findings that the defendant insurer breached its duty to defend and that Weston had not proven that the defendant insurer's breach caused Weston's emotional distress. But, because the 2009 judgment has expired, we vacate the court of appeals' award of damages and attorney fees based on that judgment.